UNITED STATES, Appellant

v

DANIEL J. BRASHEARS, Private First Class, U. S. Army, Appellee

21 USCMA 552, 45 CMR 326

No. 25,250

July 28, 1972

Captain *Walter A. Smith, III,* argued the cause for Appellant, United States. With him on the brief were Lieutenant Colonel *Ronald M. Holdaway* and Captain *Richard L. Menson.*

Captain *Gordon W. Hatheway, Jr.,* argued the cause for Appellee, Accused. With him on the brief were Colonel *Arnold I. Melnick* and Captain *Francis X. Gindhart.*

DUNCAN, Judge:

The Acting Judge Advocate General of the Army, by certification (Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867), questions the correctness of the holding by the Court of Military Review that a search of the appellee's rolled sleeve and his pockets, incidental to his lawful arrest for the offense of larceny of a wallet and its contents, was unreasonable in scope.

The record[1] reflects that after receiving information from other military police to apprehend ▋ appellee for a suspected barracks larceny of a wallet and its contents, military policemen stopped the appellee and told him to get out of his vehicle. Two military policemen searched the vehicle, finding a certain amount of money in the ashtray; while a third, Specialist Jones, ordered the appellee into a wall-search position. Jones thereupon conducted a thorough search of Brashears' clothing. A vial of heroin was found in the appellee's rolled-up shirt sleeve, and several other vials containing a residue of heroin were located in his pockets. The aggregate of the heroin found during the search formed the basis for the appellee's conviction of Charge I and its specification which the Court of Military Review set aside. _ In light of the testimony of Specialist Jones concerning the search, the Court of Military Review concluded:

"That the search of appellant was of a general exploratory nature which bore no relationship to and was not tailored to *the only permissible objects of the search (finding the wallet and its contents, and possible weapons)*, and that Specialist J in fact did not expect to find the wallet or its contents, or a weapon, when searching appellant's sleeves or inside his pockets. . . ." [Emphasis supplied.]

Since Jones had testified that when he was directed by the desk sergeant to apprehend the appellee he was also told "that in the process of the search there was a possibility that we might find some narcotics in the individual's possession," the Court of Military Review was convinced that Jones was actually searching for narcotics and not just for the fruits of the crime or for weapons. In their view "[t]his information amounts only to a suspicion, which falls far short of the standard for probable cause." Specifically, the court held that "the scope of this search incident to appellant's apprehension was unreasonable and constituted a violation of appellant's Fourth Amendment protection against unreasonable searches and seizures. Cf. Rochin v California, 342 US 165 (1952)."[2]

Clearly, the court's holding is premised on its conclusion that in light of the information available to him, Specialist Jones was limited to looking for the wallet and its contents and weapons, *the only permissible objects of the search.*" [Emphasis supplied.] We believe that this conclusion is too narrow an interpretation of the law.

In Terry v Ohio, 392 US 1, 25, 26, 20 L Ed 2d 889, 908, 88 S Ct 1868 (1968), the Court, in discussing the difference between a "search incident to an arrest and a limited search for weapons," stated:

". . . The former, although justified in part by the acknowledged necessity to protect the arresting officer from assault with a concealed weapon, Preston v United States,

---

[1] SPCM 7394.
[2] In Rochin v California, 342 US 165, 96 L Ed 183, 72 S Ct 205, 25 ALR 2d 1396 (1952), the Court held that evidence of the possession of narcotics obtained by the use of an emetic

to induce vomiting was inadmissible because it was obtained by methods that offend the due process clause of the Fourteenth Amendment to the Constitution of the United States.

376 US 364, 367, 11 L Ed 2d 777, 780, 84 S Ct 881 (1964), is also justified on other grounds, ibid., and can therefore involve a *relatively extensive exploration of the person*. A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. Warden v Hayden, 387 US 294, 310, 18 L Ed 2d 782, 794, 87 S Ct 1642 (1967) (Mr. Justice Fortas, concurring)." [Emphasis supplied.]

Since in this case the search was incidental to an arrest for a serious offense,[3] *a relatively extensive exploration of the person* of Brashears may have been justified in order to "prevent the destruction of evidence . . . which might easily happen where the . . . evidence is on the accused's person or under his immediate control." Preston v United States, 376 US 364, 367, 11 L Ed 2d 777, 780, 84 S Ct 881 (1964). Given this proposition, however, may the *exploration of the person* extend to a search for evidence of crime, other than that which justified the original intrusion, which the officer subjectively, but without probable cause, believes may be present?

We think the proper note was struck in Charles v United States, 278 F2d 386, 388, 389 (CA 9th Cir) (1960), certiorari denied, 364 US 831, 5 L Ed 2d 59, 81 S Ct 46 (1960). Charles was arrested in his home on warrants charging threat and assault and battery. An officer testified that as he walked into the house he detected the odor of burning marihuana in the air. Another officer accompanied Charles' sister-in-law outside the house in order to get Charles' eyeglasses from an automobile. Upon their return this officer stated to another officer that Charles was supposed to have marihuana on his person. Charles was told to empty his pockets on the kitchen table. Among the articles thus placed was a packet of marihuana. Charles contended that the search was not incident to the offense for which he was arrested since there was no probable cause to arrest him for the unlawful possession of narcotics prior to the search. The court stated:

". . . Here the record clearly shows that the search of appellant's pockets was designed to uncover narcotics although appellant was not yet under arrest on narcotics charges. In other words, the purpose of the search was to obtain evidence of a crime different from that for which appellant was arrested. A search of appellant's premises provoked by such a purpose would violate the Fourth Amendment. United States v Lefkowitz, 1932, 285 US 452, 52 S Ct 420, 76 L Ed 877; Go-Bart Importing Co. v United States, 1931, 282 US 344, 51 S Ct 153, 75 L Ed 374. Our problem here is whether or not the second search of appellant's person was similarly invalidated because the police were seeking to obtain evidence of a crime uncharged. Assuredly, a second search of appellant's person for concealed weapons, improving upon the earlier, desultory 'frisking' would not abrogate constitutional strictures.

"Searches of both the person arrested and the place where the arrest is made derive their legality in the absence of a search warrant from the existence of a lawful arrest. Without probable cause to arrest, subsequent searches either of person or property violate the Fourth Amendment. That a search is incident to a valid arrest saves it from proscription. The apparent reasoning behind this principle is that once a valid arrest is made, the privacy of the accused has for the most part been lawfully destroyed. Further intrusion connected with and justified by the fact of arrest should not be precluded. Accordingly, a search of the

---

[3] The Court of Military Review found that there was probable cause for the arrest of Brashears for the offense of larceny. His counsel *presume* that the apprehension was lawful, but only for the purpose of this argument.

place of arrest for evidence of the crime for which the accused has been arrested is permissible. However, if police action is not justified by or connected with the arrest, such as when a search of the place of arrest is designed to uncover evidence of a crime other than the one upon which the arrest was made, the further intrusion upon privacy cannot be tolerated. When a search has nothing to do with the arrest, it cannot be deemed incident to the accused's apprehension. Divorced from the search, the fact of arrest does not justify impairment of the right to privacy.[4]

"On the other hand, it seems to us that a search of the person of the accused, even for the purpose of uncovering evidence of a crime other than that which is charged, is generally incident to a valid arrest. Power over the body of the accused is the essence of his arrest; the two cannot be separated. To say that the police may curtail the liberty of the accused but refrain from impinging upon the sanctity of his pockets except for enumerated reasons is to ignore the custodial duties which devolve upon arresting authorities. Custody must of necessity be asserted initially over whatever the arrested party has in his possession at the time of apprehension. Once the body of the accused is validly subjected to the physical dominion of the law, inspections of his person, regardless of purpose, cannot be deemed unlawful, see People v Chiagles, 1928, 237 NY 193, 142 NE 583, 32 ALR 676, unless they violate the dictates of reason either because of their number or their manner of perpetration. [Footnote omitted.]"

It is apparent from its rationale that the court did not believe there was probable cause to arrest and search Charles *for possession of narcotics* on the basis of the information known to the officers prior to ordering him to empty his pockets. Cf. Thomas v Sheriff, Clark County, 85 Nev 551, 459 P2d 219 (1969); Abel v United States, 362 US 217, 4 L Ed 2d 668, 80 S Ct 683, rehearing denied, 362 US 984, 4 L Ed 2d 1019, 80 S Ct 1056 (1960). See also Schmerber v California, 384 US 757, 16 L Ed 2d 908, 86 S Ct 1826 (1966), relative to the extent of dominion over the person of one lawfully arrested.

In the case at bar, Specialist Jones gave a detailed description of the manner in which he searched Brashears. He asserted that he followed a standard military procedure and that he follows the same procedure in every search he conducts. He testified he would have conducted the same search had he arrested Brashears for a uniform violation. He always looks for narcotics. If narcotics or other evidence is found "you stop the search and you advise the subject of the additional charges and continue the search." He did so in this case upon finding the first vial in Brashears' sleeve. He also rearrested him for possession of narcotics. Jones rolled down the sleeve because it is "normal procedure to search the entire uniform." When asked what he was looking for when he rolled down the sleeve, Jones testified:

---

[4] After the disclosure of the first packet of marihuana, Charles was then arrested for possession of narcotics and a subsequent search of the premises revealed the second packet in the garage. In their opinion, which predated Chimel v California, 395 US 752, 23 L Ed 2d 685, 89 S Ct 2034 (1969), the court held that this evidence was also admissible as evidence which derived from a search incident to a valid arrest, citing Harris v United States, 331 US 145, 91 L Ed 1399, 67 S Ct 1098 (1947); United States v Rabinowitz, 339 US 56, 94 L Ed 653, 70 S Ct 430 (1950); Abel v United States, 362 US 217, 4 L Ed 2d 668, 80 S Ct 683, rehearing denied, 362 US 984, 4 L Ed 2d 1019, 80 S Ct 1056 (1960); Williams v United States, 273 F2d 781 (CA 9th Cir) (1959), certiorari denied, 362 US 951, 4 L Ed 2d 868, 80 S Ct 862 (1960).

"Again, I say I'm looking for anything that the individual shouldn't have on his person that is not authorized for him to have."

Inasmuch as a similarly thorough search at the police station, which discloses evidence of crime other than that for which the arrest is made, is not considered unreasonable (see Bailey v United States, 404 F2d 1291, 1292 (CA DC Cir) (1968), and cases cited), there is no reason in law or logic to cause a different result simply because the appellee was searched at the scene of the arrest. Charles v United States, supra.

The certified questions are answered in the negative.

Chief Judge DARDEN concurs.

QUINN, Judge (concurring):

To the extent that the principal opinion suggests that an arrest for any misconduct, including a traffic violation, justifies unrestricted search of the person, without regard to the purpose of the search, I do not agree with it. See United States v Mills, — F2d — (CA DC Cir), May 10, 1972, 40 US Law Week 2794. However, in my dissent in United States v Alston, 20 USCMA 581, 44 CMR 11 (1971), I pointed out that, in my opinion, the validity of a search is not determined by the state of mind of the person making it, but rather by whether "the evidence provides a reasonable basis from which it can be concluded that reasonable cause" exists for the search. In my view, there was reasonable cause to conduct a search of the accused in this case. Accordingly, I agree with the majority that the certified questions should be answered in the negative, and the decision of the Court of Military Review should be reversed.