UNITED STATES, Appellee

v

RICHARD L. GIBBINS, Specialist Four, U. S. Army, Appellant

21 USCMA 556, 45 CMR 330

No. 25,166

July 28, 1972

 

*Captain David D. Knoll* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick, Colonel George J. McCartin, Jr., Lieutenant Colonel Joseph E. Donahue, Captain David A. Fischer,* and *Captain Libero Marinelli, Jr.*

*Captain Gordon F. Bailey, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Captain Merle F. Wilberding,* and *Captain Richard L. Menson.*

### Opinion of the Court

DUNCAN, Judge:

The issue before us in this case is whether the search of the appellant's living quarters was based upon probable cause.[1]

The case for the prosecution consisted solely of the testimony of Major Mills, the deposition of Sergeant Schafianski (Prosecution Exhibit 2), and stipulations regarding the material found during the search. Mills testified that on the morning of December 8, 1970, while working in a bunker near the perimeter, he became alert to a series of whistles emanating from the nearby village. He looked through an aperture in the bunker and observed the appellant and one Groves come through the foliage that surrounded the village and then through the fence into the camp. Groves was carrying a green polyethylene sandbag, lumpy in appearance.

As they passed the bunker, Mills stopped them, seized the bag from Groves and inspected its contents. The bag contained what Mills believed to be marihuana and other narcotics. He directed the two men to report to the orderly room. En route, Groves volunteered the information that other than $10.00 worth of heroin, the remainder of the contents of the bag belonged to the appellant.[2]

A search of the appellant and Groves, by Sergeant Schafianski at the orderly room, was negative; however, needle marks and heavy scar tissue were observed on Groves' arm, and what appeared to be two or three needle marks were seen on Gibbins' arm. Schafianski then escorted the two men to military police headquarters for questioning, a matter which consumed approximately 1–1/2 hours. Schafianski informed Major Mills that as a result of his interrogation he had reason to believe that additional drugs

---

[1] At trial a motion to suppress the fruits of the search for lack of probable cause was denied.

[2] None of the offenses charged against the appellant related to the material found in the bag.

would be found in the area where the two men were quartered.

Major Mills also testified that he had previously been informed by unidentified men in his command who were participating in the drug amnesty program that the appellant, known to them as "the Rock," was "the contact or the pusher," and that the "village was where the drugs or the items of illegal use were being purchased." He received this information about a month and a half prior to the arrest of the appellant. In the interim he had searched the appellant's living quarters five times without finding anything.[3]

On the basis of his prior knowledge of Gibbins, the apparent needle marks on his arm, the statement of Groves as to the ownership of the contents of the bag, and the information given to him by Schafianski, Major Mills stated that he believed there was sufficient grounds to search the appellant's living area. The contents of the "SEARCH WARRANT" (Prosecution Exhibit 1), issued by Major Mills, are set forth in the Appendix of this opinion.

In his deposition, Sergeant Schafianski related that at the direction of his desk sergeant he contacted Major Mills, was shown the polyethylene bag and its contents, and was informed by Mills of the circumstances of the arrest of Gibbins and Groves. Schafianski placed the men under arrest, searched them, warned them of their right to silence and their right to counsel, and transported both men to the Provost Marshal's office. He also stated that "[a]t the suggestion of the desk sergeant and CID, we went over to—back to the orderly room to request that we search their areas for more drugs and so forth." Major Mills authorized the search. After the search, Schafianski released Gibbins and Groves to the "CID investigator Kizorek." When asked by counsel for the Government whether, at the time he returned to the orderly room and proposed to Major Mills the possible search, he gave Mills any additional information. Schafianski replied, "One the suspected needle marks on his arm."[4]

The following portion of the examination of Schafianski by counsel for the appellant is pertinent:

"Q. You said you took the two down to the station, is that correct?
"A. Yes, sir.

"Q. And, concluded your report, whatever you said you did. Then, why did you decide to come back?
"A. Through talking with the desk sergeant. I don't know if he talked to Major Mills or not.

"Q. Did you talk to anyone else about this?
"A. Yes. CID came in and looked at the marks and they thought they were needle marks also. They suggested that we search the area for the possibility of finding some means of administering this and to confirm an abusive use of narcotics.

"Q. I see. Was anything else said about these men at that time? Do you know anything else about them?
"A. No, sir.

"Q. So at that point you knew that one man had been seen with suspected marihuana and narcotics, and that same man had an abundance of what you thought were needle marks, and the accused was with him, is that correct?
"A. Yes, sir.

---

[3] Mills testified that the searches were conducted on the basis of division regulations, which require a monthly search of all of the living areas and at the direction of the battery coordinator who requires a search twice a month.

[4] What was meant by his use of the word "[o]ne" is unknown for the record does not reflect that he was interrupted and counsel for the Government then stated, "I don't believe I have any further questions at this time, sir." From a review of the remainder of the deposition, it would appear that the word should have been *only*.

"Q. Then you went back to the orderly room, is that what you said?

"A. Right, sir.

"Q. What happened then?

"A. I arrived at the orderly room. I saw the major again, I told him what our conversation had been, and he agreed to a search of the billets.

"Q. I see. Did he show you any additional evidence at that time?

"A. Not that I noticed.

"Q. Did he show you documents of any kind?

"A. At that time, no.

"Q. You just talked with him briefly and then you held the search, is that correct?

"A. Yes, sir. He said that I was authorized to conduct the search.

"Q. So, you went ahead?

"A. He went over there with us."

At no point in the deposition is there any indication that Sergeant Schafianski ever questioned either Groves or the appellant relative to any offense. In fact, when he warned them of their rights he "told them that I wasn't going to ask them any questions, that I was just going to bring them to the PMO."

After reading the deposition of Sergeant Schafianski, the military judge commented, "I don't find in Prosecution Exhibit 2 any information on further information passed on to Major Mills for authorizing the search."

We hold that the search was illegal because it was based on mere suspicion alone and not on ■ probable cause, and the fruits thereof inadmissible in evidence. United States v Clifford, 19 USCMA 391, 394, 41 CMR 391 (1970); cf. United States v Myers, 20 USCMA 269, 43 CMR 109 (1971). See also United States v Moore, 19 USCMA 586, 42 CMR 188 (1970); United States v Crow, 19 USCMA 384, 41 CMR 384 (1970); United States v Elwood, 19 USCMA 376, 41 CMR 376 (1970).

It is well established that mere suspicion is not an adequate foundation for a finding of probable cause to search. Henry v United States, 361 US 98, 4 L Ed 2d 134, 80 S Ct 168 (1959). The record in this case is devoid of any evidence rising above that level. United States v Clifford, supra. Assuming without deciding that arrest of appellant by Major Mills was legal and that appellant could have been charged with possession of the narcotics found in the polyethylene bag (cf. United States v Myers, supra; see also United States v Brashears, 21 USCMA 552, 45 CMR 326 (1972)), personal possession of contraband material at a place away from home does not, standing alone, provide probable cause to search the possessor's living quarters. United States v Racz, 21 USCMA 24, 44 CMR 78 (1971); United States v Elwood and United States v Moore, both supra.

Unlike United States v Harris, 403 US 573, 29 L Ed 2d 723, 91 S Ct 2075 (1971), the information from the unidentified participants in the drug amnesty program that the appellant was "the contact or the pusher" is unaccompanied by any facts illustrative of the reliability of the informants or facts showing the means by which the informants gained the knowledge about the illegal activity. Moreover, there is no indication that anyone indicated to Major Mills that appellant's living quarters were connected with the sale or use of drugs.[5] We also note that five unsuccessful searches of appellant's quarters had been made after Major Mills had been advised of the appellant's criminal conduct by the informants. The finding of the two or three needle marks on the appellant's arm fails to provide the missing ingredient. Gibbins had

[5] See United States v Lidle, 21 USCMA 455, 45 CMR 229 (1972); United States v Penman, 16 USCMA 67, 36 CMR 223 (1966); Aguilar v Texas, 378 US 108, 12 L Ed 2d 723, 84 S Ct 1509 (1964).

theretofore been described only as a contact or a pusher, not as a user. He had apparently just come from the village "where the drugs or the items of illegal use were being purchased." The needle marks, if that is what they were, could be considered as evidence of a prior possible use of narcotics. However, there is simply no indication that they were made while in his room.

In short, none of the facts relied upon by Major Mills support anything more than a suspicion that illegal material was probably present in the appellant's room.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army. The charges and their specifications are ordered dismissed.

## APPENDIX

### "SEARCH WARRANT

Before me, Major Richard L. Mills, the Commanding Officer of Battery A, 4th Battalion (Aerial Artillery), 77th Artillery (Airmobile), 101st Airborne Division (Airmobile), personally appeared a Military Policeman in the United States Army, SGT Carl J. Schafianski, on this 8th day of December 1970, and, after satisfactorily showing himself to be the person named above, did allege that there was sufficient reasonable cause to believe that additional contraband was present in the living areas of PFC Jeffrey Maxwell Groves and SP4 Richard Louis Gibbins, both men of Battery A, 4th Battalion (Aerial Artillery), 77th Artillery (Airmobile). This belief was based on the large amount of suspected narcotics, dangerous drugs, and marijuana found in the possession of these two men as they were apprehended while illegally entering the Phu Bai Combat Base and the number of needle marks found on the arms of each man. After hearing the information set forth above and judging the credibility and reliability of SGT Schafianski and the sources from which he got his information, I find that probable cause exists to search

the living areas of the following two individuals:

SP4 Richard L. Gibbins, 456–78–7988
PFC Jeffrey M. Groves, 227–70–7098
for the purpose of seizing illigal [sic] narcotics, dangerous drugs, marijuana, and any equipment used in the administration of such. I therefore authorize appropriate officials of the United States Government to search the above-named persons and places for the purpose of seizing the above-discribed [sic] items.

This warrant should be executed with dispatch and in no case after 72 hours from 1700 hours this 8th day of December 1970.

/s/ Richard L. Mills
RICHARD L. MILLS
Major, Commanding
Btry A, 4th Bn, 77th Arty
U. S. Army."

Chief Judge DARDEN concurs.

QUINN, Judge (dissenting):

The crucial question in this case is whether the facts known to Major Mills justified his determination that probable cause existed to believe that "equipment used in the administration" of narcotics or other dangerous drugs was in the accused's quarters. In my opinion, the following facts support his determination.

1. Major Mills received direct information from several members in his command to the effect that the accused was a drug "pusher" and that an adjoining village was a source of drugs. The informants were in the drug amnesty program. Mills could, in my opinion, regard such membership as indicative of a desire for, and conduct directly tending toward, rehabilitation, which imports truthfulness to their report that the accused had sold drugs to them. Thus, Major Mills could properly consider both the accused's reputation and that of the village in his decision to authorize a search. United States v Harris, 403 US 573, 29 L Ed 2d 723, 91 S Ct 2075 (1971).

2. Major Mills saw the accused and Groves enter the camp by furtive

means. They had come from the area of the village reputed to be the source of drugs, and Groves had possession of a bag, the contents of which Major Mills, on the basis of previous experience with the substances, believed to be marihuana and narcotics. Groves informed the major that "most" of the contents of the bag belonged to the accused. From these circumstances, the From these circumstances, the major could, in my opinion, reasonably conclude that the accused and Groves were acting in concert.

3. Major Mills saw "two or three" needle marks on the accused's arm. He had previously observed similar marks on the arms of "users" enrolled in the drug amnesty program. In my opinion, he could reasonably conclude that the accused was now a drug user, as well as being a pusher. Since the accused was searched and no equipment for drug injection had been found on his person or in the bag taken from Groves, Major Mills could fairly reason that the equipment, which had left the marks on the accused's arm, was probably in his quarters.

I would, therefore, sustain Major Mills' authorization to search, and affirm the decision of the Court of Military Review.