UNITED STATES, Appellee

v

JOHNNIE G. SMALLWOOD, Specialist Five, U. S. Army, Appellant

22 USCMA 40, 46 CMR 40

*Captain Peter M. Davenport* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick* and *Captain Terrence Ahern.*

*Captain Thomas B. McCullough, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Captain Richard L. Menson, and Captain Benjamin P. Fishburne, III.*

## Opinion of the Court

QUINN, Judge:

A search of the accused's person uncovered a cigarette case containing loose marihuana; a later search of his room led to discovery of marihuana and opium in a laundry bag concealed in the ceiling. Both searches were directed by the accused's company commander, Captain Meredith. The questions presented by this appeal are, first, whether the information upon which Captain Meredith based his authorization to search was reliable; and, secondly, whether the information was sufficient to meet the standard of probability as to the presence of marihuana at both places.

Search of the accused's person was precipitated by a report by Captain Ward. The captain had arrived in Vietnam on November 28, 1970, and he had been working in an area known as the Sandy Pad for only three days before the search. On December 7 about 5:00 p.m., he passed the accused and noticed that he was smoking a cigarette with a rolled or crimped end. Moments later he approached the accused to talk to him. In the meantime, the accused had mounted a truck used to transport personnel to the company area and was seated in the cab. Standing about two feet from the accused, Captain Ward observed the accused "rolling the end" of the cigarette between his fingers. The smell of the cigarette smoke was "sweet." Although Captain Ward admitted that he was "no expert," he testified that he had previously smelled marihuana smoke, apparently in demonstrations by the CID. To him, the smoke from the accused's cigarette "smelled like marihuana." Captain Ward reported his observations and that he "thought" the accused "was smoking marihuana" to Sergeant Bardsley, the noncommissioned officer in charge of the area of the accused's work.

Sergeant Bardsley telephoned the accused's company and spoke to First Sergeant Kiser. He reported to Kiser "what Captain Ward had told" him. In turn, Sergeant Kiser advised Captain Meredith of the information provided by Captain Ward.

Reports of the accused's involvement with prohibited substances were not new to Captain Meredith. On December 2, he had been advised by Staff Sergeant Limley, who worked in the on-going drug amnesty program in the company, that he had received information from an informant to the effect that the accused was *"reselling* marihuana and drugs" in the company area (emphasis supplied). Captain Meredith knew Sergeant Limley "since early 1970" and considered him to be "very reliable." He had also ascertained from Limley that the informant had on at least seven previous occasions furnished information about drugs, stolen property, and other prohibited matter which proved to be as the informant "had stated." On December 5, Captain Meredith conferred directly with Limley's informant. The informant told him that "he knew for a fact" that the

accused was "reselling marihuana and drugs." Between December 2 and December 6, the informant also reported that the accused was a "user" and was "keeping marihuana" and, occasionally, "hard drugs" in his room. On December 6, Captain Meredith discussed with Chief Warrant Officer Barber, the company security officer, the feasibility of an immediate search of the accused's quarters. Since another person, who had come down from a "forward area," was then quartered with the accused, the decision to search was deferred.

Within "a few minutes" of receiving Captain Ward's report, Captain Meredith was informed by Sergeant Kiser that the accused was in the company area. Accompanied by Kiser and Barber, Meredith left the orderly room and accosted the accused in the company street. He advised the accused that he was suspected of possessing marihuana and drugs, and he directed Barber to search the accused's person. A search of the accused's quarters followed, with the results noted at the beginning of this opinion.

■ As to the reliability of the informant, two circumstances impress us as justifying Captain Meredith's belief in his credibility. First, in each of seven instances in which he gave information to Sergeant Limley, the information proved to be correct. See United States v Miller, 21 USCMA 92, 44 CMR 146 (1971). Secondly, Captain Meredith personally talked to him. Thus, the captain was also able to assess the informant's credibility from his demeanor in direct confrontation. As to Captain Ward's reliability, Captain Meredith admitted that he knew Ward only as an officer working at the Pad. It may reasonably be inferred that he knew Captain Ward had been assigned to the Pad only three days earlier. It was apparent, therefore, that the relationship between the captain and the accused was not likely to be one that would incline the captain falsely to report the accused as involved in serious misconduct. Moreover, Captain Ward's duty assignment at the Pad indicated that his report to Sergeant Bardsley was an official report for the purpose of initiating appropriate official action. Under the circumstances, we deem it eminently reasonable for Captain Meredith to regard Captain Ward's report as reliable. See United States v Lidle, 21 USCMA 455, 457, 45 CMR 229 (1972); McCreary v Sigler, 406 F2d 1264 (CA 8th Cir) (1969), certiorari denied, 395 US 984, 23 L Ed 2d 773, 89 S Ct 2149 (1969).

■ Moving to the sufficiency of the evidence to establish probable cause to believe that the accused had marihuana on his person, we start with the fact that Captain Meredith was not informed of Captain Ward's previous experience with marihuana. Accordingly, Captain Meredith probably did not know and, therefore, could not rely upon, Captain Ward's opinion that the cigarette smoked by the accused contained marihuana. That circumstance, however, did not preclude a determination by Captain Meredith that the cigarette probably contained marihuana. The dimensions of marihuana use by American military personnel in Vietnam, as publicly reported (see Drug Abuse in the Military, Hearings before the Subcommittee on Drug Abuse in the Military of the Committee on Armed Services, United States Senate, 92d Congress, 2d Session, on S. 2139, S. 2999, S. 1189, at pages 148–149 and 395), support an inference that Captain Meredith, as commander of a company actively participating in the drug amnesty program, was familiar with the characteristic aroma of marihuana smoke, and that it was a common practice for marihuana smokers to crimp or twist their cigarettes. Consequently, considering only the matters of observation specified in Captain Ward's report, Captain Meredith had sufficient facts before him, and sufficient independent knowledge of marihuana, from which he could fairly conclude that the accused probably had smoked a marihuana cigarette at the Pad. Coupled with the earlier reports from the informant as to the accused's use of marihuana, the decision to search the accused immediately upon his return to the company area from the Pad was logically and legally sound.

■ The discovery of some marihuana on the accused's person emphasized the necessity of searching for the remainder of the substance reportedly in his possession. Since current reports from the informant indicated specifically that the accused had marihuana in his room, the decision to search that place also was logically and legally sound. United States v Sparks, 21 USCMA 134, 136, 44 CMR 188 (1971); United States v Miller, 21 USCMA 92, 94, 44 CMR 146 (1971). Compare United States v Gibbins, 21 USCMA 556, 559, 45 CMR 330 (1972).

We conclude that the results of the two searches were properly admitted in evidence. Accordingly, we affirm the decision of the Court of Military Review.

DARDEN, Chief Judge (concurring in the result):

In my opinion, the report of an officer, transmitted through usual channels to the commanding officer of the accused, that he has actually observed the accused commit an offense is sufficient to serve as a basis for the commanding officer's apprehension of the accused. Compare United States v Lidle, 21 USCMA 455, 45 CMR 229 (1972), and Guzewicz v Commonwealth, 212 Va 730, 187 SE2d 144 (1972). I, therefore, would not require Captain Meredith to have been fully aware of Captain Ward's experience in detecting the odor of marihuana.

In this case, not only was Captain Meredith aware of Captain Ward's observations, but he had also been advised previously by reliable informants that the accused possessed marihuana and sold it from his room. Accordingly, probable cause existed to apprehend the accused and search his person.

The accused's room was also properly searched, based upon the information furnished by the informants. See United States v Jeter, 21 USCMA 208, 44 CMR 262 (1972).

The evidence convincingly demonstrates probable cause for accused's apprehension, the search of his person, and the search of his room. The mili-tary judge properly admitted the fruits of those searches into evidence, and I join in affirmance of the decision of the Court of Military Review.

DUNCAN, Judge (concurring in part and dissenting in part):

While I agree that the search of the *person* of the appellant was legally sound, I believe that my brothers err in their decision that the results of the search of Smallwood's *living quarters* were admissible in evidence. See Spinelli v United States, 393 US 410, 21 L Ed 2d 637, 89 S Ct 584 (1969); United States v Gibbins, 21 USCMA 556, 45 CMR 330 (1972).

The record reflects that Captain Meredith authorized the search of the appellant's living quarters on two grounds: (1) The fact that the appellant reportedly had recently been observed, in a working area, smoking a marihuana cigarette and, upon a later search of his person, was found to be in possession of a substance believed to be marihuana; and (2) the reports of an informant, who had furnished reliable information in the past, that Smallwood was a user of marihuana, was reselling marihuana and drugs in the company area, and "in fact" kept marihuana and drugs in his room.

Personal possession of contraband material at a place away from home does not, standing alone, provide probable cause to search the possessor's living quarters. United States v Gibbins, supra, and cases cited at page 559. Information that the possessor was also a user and seller of contraband, "unaccompanied by any . . . facts showing the means by which the informants gained the knowledge about the illegal activity" (*Gibbins*, supra, at page 559), will not provide the missing ingredient. What then of the further information that Smallwood was "in fact" keeping marihuana and drugs in his room?

In *Spinelli*, supra, an agent of the Federal Bureau of Investigation averred, in part, in an application for a search warrant, that "the FBI 'has been informed by a confidential reliable informant that William Spinelli is operating a handbook and accepting

wagers and disseminating wagering information by means of the telephones which have been assigned the numbers WYdown 4-0029 and WYdown 4-0136.'" (*Id.*, 393 US, at page 414). In addition, the application disclosed that surveillance of Spinelli, on a number of days, disclosed his travel from Illinois into St. Louis, Missouri, and the parking of his car in the lot used by the residents of the apartment house in St. Louis in which the telephones were installed; Spinelli's entry into the apartment of the building where the phones were located; and that Spinelli was known to the agent and to Federal and local law enforcement agents as a bookmaker and gambler and an associate of bookmakers and gamblers.

In holding that the search and seizure in *Spinelli* was constitutionally infirm, the court stated:

". . . The tip [from the confidential reliable informant] does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. Cf. Jaben v United States, 381 US 214, 14 L Ed 2d 345, 85 S Ct 1365 (1965). In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

. . . . .

"We conclude, then, that in the present case the informant's tip—even when corroborated to the extent indicated—was not sufficient to provide the basis for a finding of prob-

able cause. This is not to say that the tip was so insubstantial that it could not properly have counted in the magistrate's determination. Rather, it needed some further support. When we look to the other parts of the application, however, we find nothing alleged which would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed [in the apartment]." [*Id.*, 393 US, at pages 416, 418.]

See also United States v Lidle, 21 USCMA 455, 458, 45 CMR 229 (1972); United States v Clifford, 19 USCMA 391, 41 CMR 391 (1970). Cf. McCray v Illinois, 386 US 300, 304, 18 L Ed 2d 62, 67, 87 S Ct 1056, rehearing denied, 386 US 1042, 18 L Ed 2d 616, 87 S Ct 1474 (1967); United States v Bunch, 19 USCMA 309, 41 CMR 309 (1970).

In United States v Harris, 403 US 573, 577, 29 L Ed 2d 723, 91 S Ct 2075 (1971), the Supreme Court distinguishes *Spinelli;* however, the basis for the distinction was not based on a retreat from the law of the *Spinelli* case requiring that the magistrate be furnished facts from which he could decide whether the informant's information had been gained in a reliable manner. Looking to the *Harris* case, it is clear that the informant related personal knowledge of the illegal activity since he had purchased illicit whiskey at the residence searched. Moreover, in *Harris,* the case Jones v United States, 362 US 257, 4 L Ed 2d 697, 80 S Ct 725, 78 ALR2d 233 (1960), is referred to as follows:

"The substance of the tip, held sufficient in Jones, closely parallels that here held insufficient by the Court of Appeals. Both recount *personal and recent observations* by an unidentified informant of criminal activity, factors showing that the information had been gained in a reliable manner, and serving to distinguish both tips from that held insufficient in Spinelli, supra, *in which the affidavit failed to explain how the informant came by his information.* Spinelli, supra, at 416,

21 L Ed 2d at 643." [*Id.*, 403 US, at pages 578, 579.] [Emphasis supplied.]

In distinguishing *Spinelli*, it is noted:

"Aguilar cannot be read as questioning the 'substantial basis' approach of Jones. And unless Jones has somehow, without acknowledgment, been overruled by Spinelli, there would be no basis whatever for a holding that the affidavit in the present case is wanting. The affidavit in the present case, like that in Jones, contained a substantial basis for crediting the hearsay. Both affidavits purport to relate the *personal observations of the informant*—a factor that clearly distinguishes Spinelli, in which the affidavit failed to explain how the informant came by his information. Both recite prior events within the affiant's own knowledge—the needle marks in Jones and Constable Johnson's prior seizure in the present case—indicating that the defendant had previously trafficked in contraband. These prior events again distinguish Spinelli, in which no facts were supplied to support the assertion that Spinelli was 'known . . . as a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers.' Spinelli, supra, at 422, 21 L Ed 2d at 647." [United States v Harris, 403 US, at page 581.] [Emphasis supplied.]

In *Harris* there was no prior history of a relationship between the law enforcement official and the informant, and it was this factor that raised the reliability problem. In the case before us there is evidence of prior reliability of the informant. However, as I understand *Harris* and *Spinelli*, in order to provide a magistrate with facts from which he can find a " 'substantial basis' " for crediting the information, he must be advised as to how the informant gained his information. Furthermore, the fashion in which an informer has gained his information may support a finding that he is reliable even though the person requesting authority to search has not had a prior relation with the informant.

Since, in the case at bar, the statement of the informant, albeit reliable, that the appellant "in fact" kept marihuana and drugs in his room, was not supported in any way by showing how he gained the knowledge, the officer authorizing the search did not have a " 'substantial basis' " for finding the information was gained in a reliable manner. I would hold that the authorization to search the living quarters was improperly authorized and the fruits thereof inadmissible in evidence. United States v Harris; Spinelli v United States; and United States v Gibbins, all supra.