UNITED STATES, Appellee

v

ROBERT W. TROY, Specialist Four, U. S. Army, Appellant

22 USCMA 195, 46 CMR 195

*Captain J. Vincent Aprile, II,* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick* and *Captain John D. Lanoue.*

*Captain Thomas W. Phillips* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Major Thomas P. Burns, III, Captain Richard L. Menson, Captain Stan L. Spangler,* and *Captain Ronald A. Cimino.*

## Opinion of the Court

DARDEN, Chief Judge:

The questions before us inquire whether the military judge erred prejudicially in denying a motion to suppress evidence found during an allegedly unlawful search of the accused's room and whether statements subsequently made by the accused should have been denied admission in evidence as the fruits of that search.

On November 19, 1970, a Specialist Markham was found unconscious in the cooks' billets of the 131st Aviation Company (Air Surveillance) at Phu Bai, Vietnam. He was found to be suffering from an overdose of drugs. Medical authorities expressed concern over Markham's condition and sought to obtain information from the unit as to the identity of the drugs that he had taken.

Captain Grady W. Wilson, the commanding officer, ordered a search of the cooks' billets to determine the source and identity of the drugs and to gather evidence against Markham. The search was conducted by unit personnel, military policemen, and Agent Thompkins of the Criminal Investigation Detachment.

Nothing was found in the cooks' billets, and Captain Wilson directed that the search be extended to a nearby hut in which Markham, the accused, and other members of the unit resided. It was to include all rooms, the public hallway, the rafter spaces, and other areas. The accused's room was locked, and someone was dispatched to locate him. In the meantime, the search continued in other parts of the building.

Captain Richard J. Sussmeier, the company administrative officer, assisted in the search and found a black shaving kit behind a refrigerator located in a common area of the hut. The kit contained a large number of barbiturate pills and some personal papers identifiable as the accused's property. Captain Sussmeier turned the bag and its contents over to Agent Thompkins.

Thompkins sought out Captain Wilson, displayed the kit and its contents, drew attention to the accused's papers, and advised him that he had other information that the accused had been with Markham on the preceding evening and had keys to Markham's room. From this information, he asked permission to search the accused's room.

Captain Wilson authorized Agent Thompkins to search the room on the information presented to him but declared that he "would have entered it without the bag like I say because I wanted the enter [sic] hootch searched."

Thompkins returned to the hut, cut the lock from the door of the accused's room, entered, and searched it. He

discovered the heroin and marihuana, the possession and introduction for sale of which the accused presently stands convicted. Thompkins apprehended the accused, took him to his office, and after proper warnings, obtained admissions that the seized marihuana belonged to him and that he knew of the presence of the heroin in his room.

On the next day, after being reminded of his rights, the accused informed Thompkins that he had been selling drugs in order to support his mother and sister.

Appellate defense counsel contend that the search of the cooks' billets and the hut in which the accused resided was general in nature, based on suspicion, and, being illegal in its inception, was not changed by the discovery in the common area of the shaving kit. Hence, they argue that the search of the accused's room had no legitimate basis.

The Government argues that the searches of the several billets and rooms were separate and that the discovery of the shaving kit and its contents constituted probable cause to search the accused's room. The original basis of the search is irrelevant, according to this contention, in view of the kit's discovery and Captain Wilson's authorization to search the room, flowing from the accused's connection with the kit.

Whether the search should be considered unitary as the defense urges or divisible as the Government contends need not concern us. In our view, discovery of the shaving kit and its contents in a common area of the hut did not constitute probable cause to enter and search the accused's room for drugs.

No information was presented to Captain Wilson that indicated a probability that the accused possessed drugs in his room. The sum of the knowledge made known to him by Agent Thompkins and of which he was otherwise aware was that Markham was suffering from an overdose of an unknown drug; that the accused had a key to Markham's room; that the accused had been with Markham on the preceding evening; and that the shaving kit, containing drugs and some of the accused's personal papers, had been found in the hut's common area. We see no basis for reasonably inferring from this information that the accused possessed additional drugs in his room. Without more, it would appear to indicate the accused had cached his supply outside the area in which he lived.

■ In many cases, this Court has stated that possession by an accused of narcotics at one place offers no foundation for inferring that he has secreted narcotics in another place. In United States v Elwood, 19 USCMA 376, 41 CMR 376 (1970), the accused was apprehended in the possession of marihuana in a civilian community several miles from his base. The Court concluded that this constituted nothing more than suspicion that he might also have marihuana concealed in his personal effects on the base. In United States v Moore, 19 USCMA 586, 42 CMR 188 (1970), discovery near the Mexican border of a large quantity of marihuana and a jacket containing the accused's personal papers led his commander at McConnell Air Force Base, Kansas, to authorize a search of his barracks room. We stated that the prosecution's case was "devoid of information showing or even suggesting the presence of marihuana or similar contraband in the appellant's room." 19 USCMA at 588, 42 CMR at 190.

In United States v. Racz, 21 USCMA 24, 44 CMR 78 (1971), we expressly rejected the argument that possession of marihuana in a bunker area permitted the inference that the accused is " 'quite likely to have further marihuana stored in his living area.' " 21 USCMA at 25, 44 CMR at 79. And in United States v Gibbins, 21 USCMA 556, 45 CMR 330 (1972), we stated that "personal possession of contraband material at a place away from home does not, standing alone, provide probable cause to search the posses-

sor's living quarters." 21 USCMA at 559, 45 CMR at 333.

■ This principle governs the situation presented in this record. The single relevant factor presented to the commanding officer was the discovery of the shaving kit containing drugs and the accused's papers behind the refrigerator in his hut's common area. Granting that this established his possession of contraband in close proximity to his living quarters, we discern no basis for inferring possession of additional drugs in his room. United States v Racz, supra; United States v Gibbins, supra. The evidence presented to the commanding officer was not enough to create more than a suspicion of additional possession and could not support an authorization of the search. Accordingly, we find that the military judge erred in overruling the defense motion to suppress the fruits of Agent Thompkins's examination of the room.

■ It follows that the receipt in evidence of the accused's oral admissions was also erroneous. Before the search, there was no suspicion that the accused was in any way involved with drugs. His first interrogation took place immediately after the search was made and was conducted by the officer who discovered the contraband. As we said in United States v Crow, 19 USCMA 384, 387, 41 CMR 384, 387 (1970), "since the oral admission followed so closely in time the illegal search, it would seem to be the direct result of exploitation by the Government of its illegal action and, hence, inadmissible."

■ While more removed from the search in point of time, the accused's admission on the following day must also be held inadmissible. In this case, the agent's interrogation was not only the result of the illegal search but also of the accused's earlier admissions that were its fruits. The Government must make a strong showing that the presumptive influence of its earlier acts held to be improper has been dispelled in order to make a later statement admissible in evidence. United States v Powell, 13 USCMA 364, 32 CMR 364 (1962); United States v Bennett, 7 USCMA 97, 21 CMR 223 (1956). The record is devoid of any evidence that tends to separate the accused's admissions on November 20 from those made on the preceding day and from the search of his quarters that was without probable cause. The second set of admissions was also inadmissible.

We conclude therefore that the military judge erred in overruling the defense motion to suppress the evidence found in the accused's room and the admissions that he made to Agent Thompkins. As these items constituted most of the case against him, the accused suffered material prejudice to his substantial rights.

The decision of the United States Army Court of Military Review is reversed and the record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge DUNCAN concurs.

QUINN, Judge (dissenting):

Whatever the sufficiency of the evidence to establish probable cause prior to discovery of the accused's bag behind the refrigerator in the hallway, the contents of the bag, in my opinion, justified search of his room. Certainly, as the majority indicate, the quantity of drugs in the bag suggested that "the accused had cached his supply outside the area in which he lived." That is not, however, the whole of the matter, as the majority imply.

Captain Sussmeier, the administrative officer, testified that had the bag not been found, he would have had "no reason" to search the accused's room. But, on discovery of the bag, he "felt we had cause to search" the room, and he immediately advised Captain Wilson, the commanding officer. Agent Thompkins exhibited the bag and its contents to Captain Wilson. Thereupon, the captain ordered that the lock on the accused's door be cut and that the search be made.

Besides the drugs, the bag contained what Captain Wilson described as "paperwork." This consisted of two groups of papers: (1) a money order transaction receipt in the accused's name and purchaser receipts for money orders; and (2) a writing listing the names of persons and an amount of money alongside each name and several sheets of paper containing columns of additions of money. The combination of papers and the amount of drugs provide a reasonable basis for the conclusion that the accused sold, as well as possessed, drugs. The proximity of the accused's room to the cache reasonably indicates that the sales were not made in the hallway where the bag was hidden, but in the privacy of the accused's room. More-over, as the papers appeared to be a summary of the transactions, it appears probable to me, as it apparently was to Captain Wilson, that while the cache was the accused's "warehouse" for the drugs and permanent records, his supply for current sales and his records for individual sales were kept in his room, where those transactions took place. I agree, therefore, with the trial judge's determination that the "bag and its contents furnished probable cause for the subsequent search of the accused's room."

Since the search of the accused's room was, in my judgment, lawful, there is no question of taint of his subsequent confessions. I would sustain the conviction and affirm the decision of the Court of Military Review.