UNITED STATES, Appellee

v

WILLIAM F. WHITTLER, Private, U. S. Army, Appellant

No. 27,936

June 14, 1974

*Captain John T. Willis* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick,* and *Captain Allan K. DuBois.*

*Captain William A. McNutt* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen, Captain Horace M. MacMillan, II, Captain M. Douglas Deitchler,* and *Captain Robert C. Roth, Jr.*

## OPINION OF THE COURT

FERGUSON, Senior Judge:

At issue in this case is the legality of a search of the appellant's locker and living area which uncovered marihuana and led to his conviction for its wrongful possession. We find the search to have been made without the requisite probable cause.

The events leading up to the search began about 6:30 p.m. on December 31, 1972, when Private First Class Donald Stoyer was awakened by the appellant who offered to sell him marihuana. Stoyer declined the offer and went back to sleep. Some 3½ hours later, Stoyer was again awakened, by movement in his left rear pocket, but he feigned sleep as the thief removed his wallet. He recognized the thief to be Private William F. Whittler, the appellant. After Whittler left the room, Stoyer heard flushing noises in the nearby second floor latrine, and he went to the latrine to investigate. While standing at a urinal, Stoyer saw the appellant emerge from one of the stalls, exchange some words with him, and then leave the latrine. Stoyer then examined the commodes and saw a yellow card similar to one from his wallet in the water in one of them. No one else was in the latrine. Stoyer then went downstairs to the ground floor where he saw the appellant go into the latrine there, and from the orderly room Stoyer heard a constant flushing noise coming from the latrine. Stoyer then left the building for a short time, and he saw the appellant in the dayroom when he returned. Stoyer went into the orderly room and telephoned Sergeant Steven W. Aceto, a military police investigator,

to inform him that Whittler had stolen his wallet. Stoyer also told Aceto that the wallet contained a marked $10 bill. Stoyer then returned to the dayroom and saw the appellant leave.

Aceto telephoned Lieutenant John H. Smith, appellant's company commander, related the information provided by Stoyer, and requested permission to search the company area for Whittler and for the stolen wallet and its contents. Lieutenant Smith consented. Aceto went to the company area and searched it and the appellant's living quarters, but found neither the appellant nor the stolen wallet or its contents. Stoyer then told Aceto about the latrine incidents, and a subsequent search of the second floor latrine produced the yellow card found to be Stoyer's NCO Club card from his wallet.

The company charge-of-quarters then suggested that the appellant might be at the NCO Club, and Aceto, Stoyer, and a second military policeman went there, located the appellant, took him into the club office, apprehended him, searched him, and found the marked $10 bill. The appellant subsequently consented to a search of his automobile, but that search was fruitless. After these events, Aceto again requested Lieutenant Smith's permission to search the appellant's living quarters for the wallet and its remaining contents. Lieutenant Smith granted permission for such a search, and related at trial his reasons therefor: the appellant's possession of the marked $10 bill and the discovery of Stoyer's NCO Club card in the latrine. Lieutenant Smith could not recall at trial whether he had yet been advised that Stoyer had observed the appellant in both latrines and heard water being flushed in them. The company commander thought there existed a "high probability" or a "good possibility" that Stoyer's wallet could be in the billet and in Whittler's area since it was not a great distance from Stoyer's area. The record does not disclose that Lieutenant Smith was made aware of any facts which would indicate that the appellant had returned, or had the opportunity to return, to his living area after the theft to secrete the wallet and its contents there. When the search was made, neither the wallet nor any of its contents

were found in the appellant's living quarters, but marihuana was discovered there in five locations. This marihuana is the foundation of Charge II and its specification.

The search of a soldier's living quarters for evidence and fruits of known crimes is not a new question in this Court. Of relevance, but by no means dispositive of the facts in this case, are our decisions invalidating the search of a soldier's living quarters for drugs on the mere fact that the soldier was apprehended elsewhere in the possession of unlawful drugs. United States v Troy, 22 USCMA 195, 46 CMR 195 (1973); United States v Gibbins, 21 USCMA 556, 45 CMR 330 (1972); United States v Racz, 21 USCMA 24, 44 CMR 78 (1971); United States v Moore, 18 USCMA 586, 42 CMR 188 (1970); United States v Elwood, 19 USCMA 376, 41 CMR 376 (1970). In these cases, we held that probable cause to search living quarters simply could not be founded upon the suspicion that a soldier discovered in the possession of drugs at one location also possesses drugs elsewhere, especially in his barracks area, even considering that a soldier is not likely to have any other place to keep his belongings.

Where the evidence sought is not contraband drugs but real evidence of known crimes of which the serviceman is suspected, this Court has also required that the search of the serviceman's locker and personal living area must be based on more than the mere fact that he is unlikely to have any other place to hide incriminating matter. "Although a soldier's room or locker are often likely places to conceal items he does not wish discovered, the Fourth Amendment requires more than the joinder of this likelihood with suspicion that he has committed a crime to justify a search of these places in the hope that evidence or fruits of crime may be discovered there." United States v Sam, 22 USCMA 124, 130, 46 CMR 124, 130 (1973). Like this case, *Sam* involved a search of living quarters for the contents of a wallet the occupant was suspected of stealing. In United States v Salatino, 22 USCMA 530, 48 CMR 15 (1973), we held that the search of a soldier's locker for an unregistered firearm previously seen in his

automobile was unlawful, because the official authorizing the search "was not provided with any information that would indicate that the . . . firearm . . . [was] to be found in the accused's locker." 22 USCMA at 532, 48 CMR at 17. Similar information is missing from the commander's analysis of probable cause in this case. The Court held in United States v Walters, 22 USCMA 516, 48 CMR 1 (1973), that the search of a suspect's locker on post for a pink and blue scarf and a pistol used in several robberies on the previous day was lawful. In *Walters* we found it "logical to reason that . . . the accused had returned to his quarters" overnight and secreted the scarf and money from the robberies. *Id.* at 518, 48 CMR at 3. This case contains no evidence that the accused returned to his living area. after the theft but before his apprehension. Consequently, the commanding officer who authorized the search of the appellant's locker and living area did not have probable cause that evidence subject to seizure was at the place ordered searched.

The decision of the United States Army Court of Military Review is reversed, the findings of guilty of Charge II and its specification are set aside, and Charge II is dismissed. The Court of Military Review may reassess the sentence or authorize a rehearing on the sentence.

Chief Judge DUNCAN concurs.

QUINN, Judge (dissenting):

Lieutenant Smith testified that he believed the facts presented to him indicated, with "high probability," that the stolen wallet would be in the accused's quarters. *Cf.* United States v Alston, 20 USCMA 581, 44 CMR 11 (1971). I believe his assessment of those facts was sound. As I perceive the evidence, it justified a conclusion that the accused had the opportunity to hide the wallet in his quarters. When the wallet was not found on his person or in his car shortly after the theft, the reasonable probability was that he had hidden it in his room before he left the barracks. Accordingly, I would affirm the decision of the Court of Military Review.