UNITED STATES, Appellee

v

WALTER GILL, JR., Private, U. S. Army, Appellant

No. 27,999

June 28, 1974

*Major H. M. Hougen* argued the cause for Appellant, Accused. With him on the brief was *Colonel Arnold I. Melnick.*

*Captain Robert L. Powell* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen,* and *Captain Robert C. Roth, Jr.*

## OPINION OF THE COURT

DUNCAN, Chief Judge:

We find that probable cause to search the appellant's wall locker in this case was not established by the inference that a serviceman's locker is the probable hiding place for stolen property. We reverse.

Appellant was found guilty, contrary to his pleas, of willful disobedience of an officer's order, wrongful possession of heroin and narcotics paraphernalia, attempted larceny, unlawful removal of a public record, and fraud in obtaining telephone services, in violation of Articles 80, 90, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 890, and 934. Appellant was sentenced to a dishonorable discharge, total forfeitures, confinement at hard labor for 2 years and 3 months, and reduction to the lowest grade. The convening authority disapproved the findings related to the disobedience and paraphernalia offenses and approved the sentence, reducing the confinement at hard labor to 2 years. The Army Court of Military Review modified the findings pertaining to the removal of

a public record, otherwise affirmed the findings, and approved only so much of the sentence as provided for a bad-conduct discharge, total forfeitures, and confinement at hard labor for 1 year and 6 months.

On August 15, 1972, as a result of a suspected absence from duty, appellant's company commander, Captain Zorka, had appellant brought to his office at the orderly room for questioning. Zorka read appellant his rights from a card, but failed to inquire as to whether appellant desired counsel or wished to waive his rights against self-incrimination. In response to Zorka's question "what's the story regarding why he was up in the barracks and not in his place of duty," the appellant began to search through his shirt pocket for a counseling appointment slip to explain his absence. He pulled out several papers from his pocket. Among them was one which the Captain recognized as a transmittal or "buck slip" in which he directed the first sergeant to begin the paperwork for appellant's administrative elimination from the service.[1] The buck slip had been stapled to a military police report regarding an attempted larceny by appellant while his unit was stationed at Fort Lewis, Washington. At trial, Captain Zorka testified that on Friday, August 12, 1972, he placed the police report with the "buck slip" attached on the first sergeant's desk.

After recognizing the "buck slip," Zorka ordered appellant to surrender it; he refused. Subsequently military police took it from his pocket. Before this, Captain Zorka was unaware that the police report was missing. After the discovery of the slip, a search of the orderly room failed to locate the missing report.

Appellant was then taken to the military police station where Captain Zorka consulted with the desk sergeant concerning the advisability of conducting a search of appellant's wall locker. Appellant then was returned to his unit. Captain Zorka testified that "I felt that he had the other part of it—the MP report —in his wall locker and I told him that I

was going to search his wall locker." The Captain's search of appellant's locker disclosed a shaving kit containing a homemade syringe and a needle which later was found to contain traces of heroin. Other narcotics paraphernalia were found in a sewing kit.

In addition to the "buck slip," Captain Zorka states that his decision to search appellant's wall locker was based on the following facts: appellant's recent treatment at the drug center; appellant's inability to afford off-post housing; appellant's locker was among those sufficiently sizeable for the Captain to require "everybody to keep everything in it"; appellant's locker was locked and "is normally where people would keep it"; and the appellant's lack of an automobile. The Captain states that he also considered the detrimental nature of the missing report which "would be necessary, based on his performance, to start some 212 action, elimination from the service," as well as the possibility that appellant would use the report to persuade witnesses on the attempted larceny to change their expected testimony.

The military judge found that the questioning of the appellant in Captain Zorka's office was unlawful, but he held that the discovery of the "buck slip" was an observation of an item in "plain view" which bore no relationship to the unlawful interrogation. The military judge next denied appellant's motion to suppress the evidence obtained from his locker since Captain Zorka had reasonable grounds to believe that the missing report would be found in appellant's locker.

While the facts raise some interesting questions with respect to the plain view doctrine, the sole issue before us is whether there was probable cause to search appellant's locker. We recently spoke on this subject in United States v Sam, 22 USCMA 124, 130, 46 CMR 124, 130 (1973), as follows:

Although a soldier's room or locker are often likely places to conceal items he does not wish discovered, the Fourth Amendment requires more than the joinder of this likelihood with the suspicion that he has committed a

[1] Certain language on the slip refers to appellant in an offensive manner.

crime to justify a search of these places in the hope that evidence or fruits of crime may be discovered there.

We find nothing in the nature of the police report or the 3 days that elapsed between Captain Zorka placing the report with the "buck slip" attached on the first sergeant's desk and its discovery in appellant's possession that makes it probable the report would have been concealed in appellant's locker. Captain Zorka's feeling that if appellant was "to keep it it would be in his wall locker" as well as the other facts that he allegedly considered are insufficient to establish probable cause to search appellant's locker. Moreover, the convenience and even necessity of using a locker as a storage place does not make it probable that appellant would secure a stolen article there. United States v Sam, supra. See also United States v Salatino, 22 USCMA 530, 48 CMR 15 (1973); United States v Gibbins, 21 USCMA 556, 45 CMR 330 (1972); United States v Racz, 21 USCMA 24, 44 CMR 78 (1971); United States v Moore, 19 USCMA 586, 42 CMR 188 (1970); United States v Elwood, 19 USCMA 376, 41 CMR 376 (1970).

The decision of the Army Court of Military Review is reversed. The findings of guilty of Charge II and its remaining specification are set aside. Charge II is ordered dismissed. A rehearing on sentence is ordered.

Senior Judge FERGUSON concurs.

QUINN, Judge (dissenting):

Late Friday afternoon, Captain Zorka placed a police report consisting of more than four 8-by 11-inch pages on the desk of the first sergeant. The report related to an alleged attempt by the accused to break into the wall locker of another soldier. Zorka had stapled to the report a "buck slip" addressed to the first ser-geant on which he indicated that Lieutenant Colonel Brookshire wanted "212 action" [AR 635-212, July 15, 1966] initiated for the accused, and he asked the sergeant to "start paper work." On Tuesday morning, the accused came before Captain Zorka and was found in possession of the buck slip. Thereupon, the captain made "a thorough search" of the orderly room for the police report. It was not found.

As the police report and buck slip required official action that would take place in the orderly room, the papers should have been there. Since they were not, the reasonable inference was that they had been taken away. As one of the missing papers was found in the accused's possession, the logical inference was that he had removed it; and since he had nothing to do with the preparation of the required paper work, the inference was that the removal was unauthorized. See United States v Ball, 8 USCMA 25, 23 CMR 249 (1957).

Unauthorized possession of part of the papers confronted Captain Zorka with the question as to the probable location of the remaining papers. The search of the accused established that they were not on his person. Captain Zorka then concluded that they were probably in the accused's locker. He testified that he reached this conclusion because he knew that "the accused didn't own a car;" had no money so that he could not maintain living quarters off-base; and that "everybody" was "require[d] . . . to keep everything" in his wall locker. In my opinion, these circumstances provided ample cause to believe that the police report was in the accused's locker. United States v Sparks, 21 USCMA 134, 44 CMR 188 (1971). Where else could the accused have reasonably hidden a batch of 8- by 11-inch paper? Consequently, I would affirm the decision of the Court of Military Review.