UNITED STATES, Appellee

v

KEVIN A. LIDLE, Airman Basic, U. S. Air Force, Appellant

21 USCMA 455, 45 CMR 229

No. 24,830

June 23, 1972

*Lieutenant Colonel James LaBar* argued the cause for Appellant, Accused. With him on the brief were *Emerson L. Darnell, Esquire, Colonel George M. Wilson,* and *Lieutenant Colonel Norman L. Paul.*

*Major Stark O. Sanders, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Colonel Henry R. Lockington.*

## Opinion of the Court

DARDEN, Chief Judge:

The issue in this case tests the existence of probable cause for a commanding officer's order to search the appellant's automobile.

A general court-martial composed of only a military judge convicted appellant Lidle of one specification of wrongful possession of marihuana and one specification of wrongful sale of hashish, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The court acquitted him of one specification alleging wrongful possession of hashish. The United States Air Force Court of Military Review affirmed the findings of guilty. As the case reaches us, the sentence consists of a bad-conduct discharge, confinement at hard labor for two years, and forfeiture of $75 a month for two years.

Because of his concern about appellant Lidle's trafficking in marihuana, Airman Houltz, his roommate, visited the base chaplain at McGuire Air Force Base, New Jersey. Later, he informed Office of Special Investigations Agent Owens that on February 5, 1971, he had seen the appellant sell hashish and that he had also seen him use it.

Agent Owens testified that after this conversation he "started checking on Airman Houltz, into his background, his reliability, and what information I could find on him. I talked with his NCOIC and commander. I reviewed his records, and there was a State Police check made on him to verify some of the information he provided."

Deciding that Airman Houltz was reliable, Agent Owens arranged with Houltz for the latter to purchase some marihuana from appellant Lidle. Houltz bought what proved to be hashish from the appellant on February 15.

Between the date of that purchase, February 15, and the date of the search with which we are concerned, March 1, Agent Owens and Airman Houltz met "five or six times." Agent Owens testified that at almost every one of these meetings he asked Airman Houltz where the accused kept his "stuff." According to Owens, Houltz replied that "he was not keeping it in his room. He had been told one or two times that it was in his car—that he had it in his car, and that was probably where he was keeping it at that time." On February 25, after Houltz had expressed the opinion that

the car was still the storage place, "[w]e had him draw a map where he parked his car."

At approximately 12:30 a.m. on March 1, Airman Houltz called Owens to inform him that the appellant had a large sack of marihuana in his possession in their room and that he had just left with it to go down to the second floor to make a sale. Agent Owens then called the commanding officer to seek authority for a search. When asked what information he gave the commanding officer to support the search, Agent Owens replied:

"A. That the informant had told us about this information back in January concerning him selling hashish, and that he provided information concerning other individuals which we had confirmed by two other sources, one of which was a policeman in the local area. Also that [sic] had called us and said he had some marijuana and was going over to the second floor to sell it. Also that we made the purchase on the 15th of hashish from him."

Following this telephone conversation the commanding officer, Colonel Clarke, authorized a search of the appellant's person, his room, and his automobile. This verbal order was confirmed in writing the same day. The search produced a block or cube of hashish in the accused's room and a plastic bag containing 830.0 grams of marihuana from the trunk of the appellant's automobile.

At trial and on appeal, the defense contentions are that the base commander was without probable cause to believe the appellant concealed marihuana in his car and that the information Houltz furnished was not fresh enough to justify an inference that it was in the car. Their argument is that Houltz had informed Agent Owens three days before the search that he thought the appellant kept marihuana in his automobile but that the only information Houltz communicated on March 1 was that the appellant then possessed a bag of marihuana.

When information about a possible search comes not from the personal knowledge of the one seeking the authority, the authorizing official must be given information from which he can determine, first, that the person who orginated the information was reliable and, second, some of the underlying circumstances that caused the person to believe the object of the search is where he thinks it is. United States v Penman, 16 USCMA 67, 36 CMR 223 (1966); Aguilar v Texas, 378 US 108, 12 L Ed 2d 723, 84 S Ct 1509 (1964). The authorizing official cannot rest on an unexplained conclusion of even the person seeking the authority. See Aguilar v Texas, supra; Nathanson v United States, 290 US 41, 78 L Ed 159, 54 S Ct 11 (1933). A fortiori, the authorizing official must have more than a conclusion of a third party only relayed by the person who sought the authority. Spinelli v United States, 393 US 410, 21 L Ed 2d 637, 89 S Ct 584 (1969).

In this instance the person who furnished the information on which the search was based was not an unnamed member of the underworld but a known, reputable member of the authorizing officer's command. Airman Houltz's reliability was satisfactorily established by Agent Owens's informing the commanding officer of his having made a controlled purchase and of his having provided other information that had been confirmed.

The information Agent Owens gave the commanding officer, Colonel Clarke, supported a determination of probable cause to search the appellant's person and his locker. Whether this information also supported a search of the automobile is much more difficult.

Houltz's suspicion that the automobile was the place of storage was based on his having been told this by the appellant and on his having observed the appellant leave his room for a brief period when a person who desired to purchase marihuana came to the room. The Government suggests that this case involves a pattern or a continuing

**457**

course of conduct instead of an isolated instance of possessing contraband.

If all the information Houltz had conveyed to Agent Owens had been furnished to Colonel Clarke, the latter would have been justified in authorizing the search of the automobile. Since, as a result of Lidle's statement to this effect and his own observation, Houltz thought Lidle "normally" kept the marihuana in his car, and since on the night of the search Houltz had good reason to believe Lidle was then in possession of a large quantity of marihuana, Houltz could reasonably believe that marihuana in addition to that Lidle had with him would be found in the car.

The only information Agent Owens presented to Colonel Clarke on the reason for desiring to ■ search the automobile was that Houltz thought the appellant kept hashish or marihuana there. Nothing Colonel Clarke knew on the evening of March 1 allowed him to make his own evaluation of the likelihood that marihuana was in Lidle's automobile. The infirmity that therefore exists is that the commanding officer accepted Houltz's unelaborated conclusion that the appellant sometimes stored marihuana in his automobile. Under *Aguilar, Nathanson,* and *Spinelli,* all supra, he could not do this but is required to judge for himself the persuasiveness of the information pointing to the likelihood of the marihuana's being in the place Houltz thought it would be found.

The appellant's conviction under specification 2 of the Charge is set aside and the specification is dismissed. The record of trial is returned to the Judge Advocate General of the Air Force. The Court of Military Review may reassess the sentence on the basis of the remaining finding of guilty.

Judge DUNCAN concurs.

QUINN, Judge (dissenting):

In my opinion, the majority take too narrow a view of the evidence presented to Colonel Clarke, the base commander. I agree with the trial judge that the evidence demonstrated a "modus operandi on the part of the accused" from which the colonel could properly determine that probable cause existed to search the accused's car.

As the majority note, Houltz gave Agent Owens more information about accused's probable use of his car as a place of concealment for his drug supply than Owens conveyed to Colonel Clarke when he applied for authorization to search. It is also true, as the majority indicate, that Owens admitted he only informed Colonel Clarke that Houltz "*thinks* that it [the accused's drug supply] is in his car." (Emphasis supplied.) Apparently, the majority attach no importance to other testimony by Owens. Owens also informed Colonel Clarke as to "what we had." The testimony fairly indicates that the report included information to the effect that the accused did not keep the drug supply in his room. Colonel Clarke was further informed that the accused had just been observed with a large supply of marihuana in his possession and was on his way to make a sale. Since the accused was known not to keep his supply in the room, it was obvious that if he completed the sale before the agent reached the area, it was not likely that the marihuana would be found in his room. The logical question then was: "Where on an air base could an airman basic having possession of a large quantity of marihuana keep his supply, if he did not keep it in his quarters?" It seems to me the obvious answer is, "In his car." Consequently, I construe Houltz's statement as to the place of concealment, not as a statement of mere "suspicion," as the majority characterize it, but as his reasoned conclusion from the facts as to the accused's method of operation.

I believe that Colonel Clarke reasoned in the same way that Houltz reasoned. In my judgment, his conclu-

458

sion was eminently reasonable and justified by the information conveyed to him. His authorization to search the accused's car was, therefore, predicated upon facts establishing probable cause.

I would affirm the decision of the Court of Military Review.