UNITED STATES, Appellant

v

CURTIS SCARBOROUGH, JR., Specialist Four, U. S. Army,
Appellee

*Alan Dranitzke,* Esquire, argued the cause for Appellee, Accused. With him on the brief were *Lieutenant Colonel Edward S. Adamkewicz, Jr., Captain Albert T. Berry,* and *Captain Lawrence I. Wagner.*

*Captain David A. Schlueter* argued the cause for Appellant, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen,* and *Captain Richard A. Karre.*

### OPINION OF THE COURT

DUNCAN, Chief Judge:

The Judge Advocate General, United States Army, has certified this case here on the question whether the United States Army Court of Military Review was correct in determining that the affidavit used to obtain a search warrant failed to establish probable cause.

The affidavit, made by Agent Rick P. Boetticher on February 23, 1972, is set out in the Appendix. It was presented to a judge of the United States Civil Administration Courts, Ryukyu Islands (USCAR), who, based on its recitals, issued a search warrant that turned up heroin in premises allegedly rented for the appellee by another soldier.

Essentially, the affidavit avers that a confidential and reliable informant was approached at approximately 6:00 p.m. on February 22, 1972, by an unidentified man, who offered to arrange a sale of heroin to the informant. The unidentified man entered the informant's automobile and directed him to drive to an apartment building located at 238 Banchi, Aza-Oyama, Ginowan City, Okinawa. There the informant was told to remain in the car while the unidentified man "went into the apartment" to obtain the heroin. The man returned a few minutes later and stated they would have to wait a few more minutes until his " 'connection' " returned, as he was not then at the apartment.

A few minutes later a white vehicle drove up, and the unidentified man stated that the " 'connection' " had arrived, and again told the informant to remain in the car while he returned to the apartment. The unidentified man left the informant's car, went to, and entered an apartment on the third floor of the building. When he returned, he gave the informant two bags of heroin, which he said had been obtained from

the " 'connection.' " He added that the connection had showed him a large paper bag containing approximately 40 to 50 additional bags of heroin.

On February 23, the affiant and the informant drove to the same building, where the informant pointed out the apartment that the unidentified man had entered and from which he had returned with the heroin. The affiant then determined that the particular apartment was numbered B-302.

Agent Boetticher also averred that he had found his informant to be reliable in the past, in that, on a number of occasions in the past month, he had furnished information on the illegal sale and possession of narcotics in Okinawa that had proved to be accurate.

Based on the affidavit, the magistrate granted a warrant to search the apartment. As noted above, the search disclosed the presence of heroin, the responsibility for which was ultimately placed on the appellee.

In reversing, the Army Court of Military Review expressed the view that our holding in United States v Lidle, 21 USCMA 455, 45 CMR 229 (1972), required the reliability of the unidentified man to be shown as well as that of the informant. It concluded that, as this reliability had not been shown, the affidavit was not sufficient to support the issuance of a search warrant. At this level, the appellee seeks to sustain the Court's action principally on that basis, but also alleges that the affidavit is deficient in failing to establish the reliability of the informant and failing to show circumstances corroborating the information reported.

 When an affidavit is based on information furnished by a so-called reliable informant, it must, to support the issuance of a warrant, apprise the magistrate of the circumstances which led the affiant to believe (1) that the informant was reliable or credible, and (2) that the items sought to be seized were located at the place to be searched. Aguilar v Texas, 378 US 108 (1964); United States v Lidle, supra. There must be more than just a conclusion of a third party relayed by the affiant to the magistrate. Spinelli v United States, 393 US 410 (1969).

In determining, however, whether an affidavit meets this test, courts must not become hypertechnical:

[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

United States v Ventresca, 380 US 102, 108 (1965).

 What the affidavit must show is facts, not conclusions, that establish probable cause to search a place for evidence of criminal activity. Spinelli v United States, supra. It is not intended to establish the existence of guilt either *prima facie* or beyond a reasonable doubt but only that the probabilities weigh in the Government's favor and thus justify the invasion of privacy. Moreover, where a search is authorized by a magistrate, we must sustain his determination to issue the warrant so long as there was in the affidavit a substantial basis for him to conclude that narcotics were probably present at the premises to be searched. Jones v United States, 362 US 257 (1960); United States v Penman, 16 USCMA 67, 36 CMR 223 (1966).

 Bearing these considerations in mind, we turn to the affidavit to determine whether it is sufficient to meet the bifurcated test laid down in *Aguilar*. First, we note that, contrary to defense assertions, it establishes the reliability of the informant. Thus, Agent Boetticher set out that the informant, in the preceding month, had furnished him information on a number of occasions concerning the illegal possession and sale of

narcotics on Okinawa. In each instance, this information had proved to be accurate. This confirmation of the accuracy of prior information is sufficient to have permitted the magistrate to make a finding of reliability. United States v Smallwood, 22 USCMA 40, 46 CMR 40 (1972); United States v Lidle, supra; United States v Miller, 21 USCMA 92, 44 CMR 146 (1971); Espinoza v United States, 278 F2d 802 (5th Cir 1960). Thus, the first prong of the *Aguilar* test is satisfied.

■We likewise believe that the affidavit made known to the magistrate the underlying circumstances which caused Boetticher to believe that narcotics were on the premises to be searched. It set forth in detail a transaction between the informant and an unidentified male on the previous evening, in which the unidentified male twice entered the apartment to meet his "connection." After the last entry, he returned with two bags of heroin and related to the informant that the connection had shown him 40 to 50 additional bags. In addition to relying on his informant, Agent Boetticher also drove with him to the area, had him point out the apartment in question, and himself ascertained its number. All these detailed circumstances were based on the direct observation of the informant and Agent Boetticher. Unlike the officer in *Aguilar,* the affiant here presented facts to the magistrate and not a simple conclusion that he believed drugs to be kept on the premises to be searched. Aguilar v Texas, supra at 109.

We are not unaware that more facts could have been included in the affidavit. Thus, Agent Boetticher testified before the military judge that he tested the heroin obtained by the informant and determined that it was in fact the drug, but this was not included in the affidavit. Moreover, while the affidavit states the informant observed the unidentified man enter the particular apartment involved, it does not relate the manner in which he did so. Amplification of these matters would, of course, have made a stronger case, but we must remember the adjurations of practicality stated in United States v Ventresca, supra. The real question is not whether a better showing of probable cause could have been made,

but whether one in fact was made. We are satisfied that this affidavit meets the applicable standards.

■ Turning finally to the accused's central contention, as based on the rationale of the Court of Military Review, we know of no requirement that there be a showing of the reliability of the unidentified male who sold the heroin to the informant. While his information that there was more heroin in the apartment was hearsay, there need only be a basis for crediting that hearsay. Jones v United States, supra at 269; United States v Penman, supra.

Finally, the authorities contradict the appellee's assertion. In rejecting a similar contention, the United States Court of Appeals for the Eighth Circuit declared:

> The crucial question here, however, is not, as suggested by appellants, whether the affiant can attest to the reliability or credibility of the second individual, but whether the information furnished by the informant, taken as a whole in light of the underlying circumstances, can be said to be reliable. The affidavit need only establish the *probability* of criminal activity and secreting of evidence on specific premises, not proof beyond a reasonable doubt.

United States v Smith, 462 F2d 456 (8th Cir 1972). See also United States v Fiorella, 468 F2d 688 (2d Cir 1972).

■ As we have said, the important point is not that the reliability of an unidentified person be shown, but whether the information furnished by the *reliable* informant, taken as a whole, can be said to be sufficient. Viewing the detail in this affidavit, the fact that the unidentified man was engaged in criminal activity and the specificity with which the informer was able on the following day to relocate the premises, we are certain that it was sufficient to permit the magistrate to find the existence of probable cause. It follows that the Court of Military Review erred in reaching a contrary conclusion.

The certified question is answered in the negative. The decision of the U.S. Army Court of Military Review is re-

versed, and the record of trial is returned to the Judge Advocate General of the Army. Further proceedings may be had before the Court, consistent with this opinion.

Judge QUINN and Senior Judge FERGUSON concur.

## APPENDIX

### UNITED STATES CIVIL ADMINISTRATION COURTS RYUKYU ISLANDS

I, Rick P. Boetticher, (Name) (Crim Inves) of 123d MP Det (OI), Sukiran (Organization) for the purpose of obtaining (a search) warrant, hereby states as follows: That on Wednesday morning, 23 February 1972, a confidential informant, who is known to me personally, and whom I have found to be accurate and reliable in the past in furnishing me information as to persons found by me to be in possession of, using, or otherwise trafficking in heroin, on Okinawa, Ryukyu Islands, contacted me at my office and told me in the course of the conversation that he, the said informant, was approached on Tuesday evening, 22 February 1972, about 6 pm, by an unidentified man who offered to arrange a sale of "smack", a term frequently used by those engaged in trafficking in narcotics when referring to heroin, to him. The unidentified man related that he has a "connection" that sells "smack" in quantity. The unidentified man further related that he would take the said informant to the apartment where the "connection" lives, and obtain a sample of "smack" for him. The said informant further told me in the course of our said conversation that the said unidentified man entered the automobile of the said informant and directed the said informant to the vicinity of an apartment building identified and known as Building B, 238 Banchi, Aza-Oyama, Ginowan City, Okinawa, and told the informant to park his car at a place near the said building; and told the informant to remain in the car while he went into the apartment to obtain the "smack". The said unidentified man returned and related that the "connection" was not at the apartment, and stated they would wait a few minutes until the "connec-

tion" returned. The said unidentified man stated that the "connection" normally only sells dollar ($100.00) bags of "smack", but that he might give the said informant a sample. Upon the arrival of a white ORA vehicle, the said unidentified man stated "the connection has arrived", and again told the said informant to remain in the vehicle while he went to the apartment. That the said unidentified man then left the informant's car and went to and entered an apartment on the third (the top) floor of the said apartment building. The said unidentified man returned to the car and gave the said informant two "dime" ($10.00) bags of heroin, which the said unidentified man related he had obtained in the said apartment from the "connection". The said unidentified man stated that the "connection" showed him a large paper bag that contained approximately forty to fifty "dollar bags" of "smack".

I, the said Rick P. Boetticher, further swear that earlier on this date I, and the informant, drove to and by the said apartment building in my car; that the said apartment building has a ground floor and two floors above the said ground floor; that while we were riding in my car as aforesaid by the said apartment building the said informant pointed out to me the apartment that the unidentified man had entered earlier as related and from which he brought the heroin which he, the said unidentified man, delivered to the said informant as aforesaid; that I then ascertained that the said apartment which the said unidentified man had entered as told to me as aforesaid was marked and designated as Apartment "B-302".

I further swear and state that I have found the informant who contacted me to be reliable, that based upon my personal knowledge and his past performance in furnishing me reliable information as to persons found to be in possession of heroin, that I believe him to be reliable; that the said informant, on a number of occasions in the past month, has furnished me information concerning the illegal sale, and possession of narcotics on Okinawa, and that this information so furnished me by the said informant has proved to be accurate and reliable.

Based upon all the foregoing facts, circumstances and information and for the reasons aforesaid, I am positive that heroin is now at and now is being unlawfully and illegally kept, concealed, located in, possessed, carried, used, and sold in said apartment, in violation of the laws of the Government of the Ryukyu Islands prohibiting and punishing the use, possession, and sale thereof. I further believe that just and reasonable cause exists for the issuance of a search warrant, to search the said described apartment for heroin.

/s/ Rick P. Boetticher
 Signature

Sworn to and subscribed before me at *Urasoe City,* Okinawa, this *23th* day of *February 1972.*

/s/ Eugene V. Slattery
 Judge

USCAR CRIMINAL COURTS