UNITED STATES, Appellee

v

LLOYD S. BARNARD, Private First Class, U. S. Marine Corps,
Appellant

No. 28,421

January 31, 1975

*Major D. A. Higley,* USMC, argued the cause for Appellant, Accused.

*Lieutenant Mark D. Wigder,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel P. N. Kress,* USMC.

## OPINION OF THE COURT

QUINN, Judge:

A branch of the Marine Corps Exchange at the Marine Air Station, Iwakuni, Japan, was broken into and 70 pieces of jewelry were stolen. An authorized search of accused's quarters produced evidence that was used against him at his trial for housebreaking and larceny. On this appeal, the accused contends that the authorization to search was illegal. The contention is predicated on two grounds: (1) that the matters presented to the officer who authorized the search were "so indefinite and vague as to be entitled to be of little or no weight" and did not, with reasonable probability, connect the accused to the offenses; and (2) even if the requisite connection was sufficiently indicated, the facts did not provide probable cause to believe that any evidence would be found in the accused's room.

The break-in and loss were discovered on August 7, 1972. Agent Townsend of the Naval Investigative Service was assigned to the case, and the pawn shop detail of the service was notified. As a result of leads developed in the investigation, Agent Townsend applied, in writing, to the commanding officer of the air station for authorization to search the accused's personal effects in his room and at his work site for jewelry and pawn shop tickets. In material part, the application recited the following:

The facts and circumstances known to me tending to establish the foregoing grounds for authorization to search

and seize are as follows: during the hours of from 1700 on 6 Aug 1972 and 0830 hours on 7 Aug 1972, the Marine Corps Exchange store number one, MCAS Iwakuni, was forcibly entered by unidentified persons who committed larceny of US Government property while inside the building. Seventy items of jewelry were stolen from the jewelry section of the exchange. On 26 Aug 1972, SUBJ pawned one item of jewelry, a ring, and subsequently has pawned seven additional items of jewelry believed to be stolen from the exchange. On 2 Sep 1972, one ring that remained in the Angel Pawn shop after the other items had been redeemed, was taken to the exchange where it was identified as being the same stock number as one stolen at the time of the break-in. Exchange records show that no ring of the same stock number had been sold. Other items of jewelry which have been pawned since 2 Sep 1972 by SUBJ are believed to be additional items stolen from the exchange. Preliminary investigation of SUBJ has revealed that he does not live off base in private housing; therefore, it is believed that the remaining items of jewelry are being kept in spaces over which he maintains control.

█ █ Appellate defense counsel contends first that the affidavit contains no facts to support the two representations by Agent Townsend that items pawned by the accused in the Angel Pawn Shop were "believed" to be the same as some

of the jewelry stolen from the exchange.[1] Counsel relies upon a number of civilian and military cases to support his argument; typical is *United States v Lidle,* 21 USCMA 455, 457, 45 CMR 229, 331 (1972) in which this Court said: "The authorizing official cannot rest on an unexplained conclusion of even the person seeking the authority." Townsend's statements of belief are not, however, the whole of the matter. Another statement in the affidavit indicates, with reasonable probability, that one of the stolen pieces of jewelry was pawned by the accused. That article is the ring Townsend said was taken from the pawn shop on September 2, and brought to the exchange, where it was "identified as being the same stock number as one stolen," and shown by exchange records as not having been sold. True, the person who made the examination of the ring and the records was not identified, but the fair inference from the averments is that the individual was familiar with the jewelry stock and sales records of the exchange, and was, therefore, competent to make the examinations and to report the results.[2] Possession of one of several articles of recently stolen property supports an inference that the possessor has others. *United States v Sparks,* 21 USCMA 134, 136, 44 CMR 188, 190 (1971). The inference provides strong support for Townsend's statements of belief that the other jewelry pawned by the accused was part of the stolen jewelry. But even if we give too much weight to the inference, possession of one item was alone sufficient to justify a search.

To escape the effect of the identification of the one ring, appellate defense counsel urges us to disregard this part of Agent Townsend's affidavit on the ground that it is a "misstatement" of important facts and "highly misleading." See *Morris v United States,* 477 F2d 657 (2d Cir 1973). No such claim was made at trial. More importantly, one of the facts essential to the claim was not before the trial judge on the motion to suppress. Ordinarily these circumstances would justify disregard of the alleged misstatements on the ground that they are asserted too late, but in any event, the contention lacks merit.

Two facts in the crucial passage of the affidavit are challenged as materially misleading. The first is that the pawned ring "was identified as being the same stock number" as one of the stolen rings. At trial, Agent Townsend testified that the phrase meant the "model and style number" of the ring, as noted inside the ring and on exchange records. Apparently, appellate defense counsel assumes that the words "stock number" import a unique number assigned to an article which identifies it as being separate from all other articles of the same kind in a particular stock of goods. On that premise, he argues that the commanding officer of the air station could reasonably have been misled into believing that the ring was absolutely identified as one of the stolen items, whereas, model and style number identification is much less certain, and such identification could have been deemed by the commander to be insufficient to establish a probable connection between the pawned ring and one of the stolen rings. We doubt we can take judicial notice of the sort of merchandising implied by counsel, or even that the practice was followed by the

---

[1] Agent Townsend's testimony at trial indicates he had knowledge of a number of matters that were not included in his affidavit. For example, he received an "inventory" of the stolen jewelry, which by inference included a description of each piece, but his application did not describe any of the jewelry on the list or the jewelry pawned by the accused so that the commanding officer could himself compare the two to determine their probable identity. Consequently, determination of the issue presented by the appeal must be solely on the basis of the

sufficiency of the affidavit. United States v Clifford, 19 USCMA 391, 393, 41 CMR 391, 393 (1970).

[2] Agent Townsend identified the individual in his testimony and indicated that this person had served a number of years in the jewelry department of the exchange. The commanding officer was kept advised of the progress of the investigation before the affidavit was presented to him, but there is no clear indication he was furnished this information before presentment of the affidavit.

post exchange, but if we can, we perceive no manifest contradiction between Townsend's affidavit and his testimony.

■ Assuming the words "stock number" have the meaning in retail establishments attributed to them by counsel, the affidavit, in our opinion, indicates they did not mean a unique identification number for a single item. The statement immediately following the initial reference, which notes the exchange records "show that no ring of the stock number had been sold," makes clear that the stock number identified not a particular ring, but a class of rings. Thus, the words describe a group. In that regard, the description is not materially different from one to the effect that the pawned ring was of the same model and style number of a ring stolen from the exchange. Substantial similarity, not absolute identity, is implied in both descriptions. We do not, therefore, regard the phraseology, which Townsend apparently adopted from the exchange employee who examined the ring and records, as representing that the pawned ring bore a special number, on the order of a unique serial number, that matched a number used by the exchange to account for that merchandise in its inventory.

■ The second alleged misleading statement also concerns the sentence, "Exchange records show that no ring of the same stock number has been sold." Townsend testified that sales records dating back 4 months from the date of the theft were searched, and these indicated that no ring of the same model and style number, which was owned by the exchange before the theft, had been sold. According to Townsend's testimony, therefore, the statement in the affidavit was literally true. Still, appellate defense counsel contends it was materially misleading. He bases his argument on the alleged fact that "the accused had actually been present at Iwakuni prior to the four month examination period." Counsel implies that the accused could have bought one of the rings some time in March, the fifth month before the theft. The fact of accused's presence at the stated time was not before the trial judge on the motion to suppress, and it

nowhere appears in the record that Agent Townsend knew of it when he applied for authority to search. However, if we are to look at matters other than those presented on the motion, then the other available evidence demonstrates the absence of merit in the implication posited by counsel. First, a purchase order from the exchange suggests that the ring in issue was not received by the exchange until May, which means the accused could not have bought the ring, as counsel implies. Secondly, according to accused's unsworn statement during the sentence proceeding, which is also the source of defense counsel's assertion of the time of accused's arrival at the air station, the accused was remitting $100 of his monthly salary of approximately $320 for the support of his son. The ring in issue contained 22 diamonds, and while its retail value was not stated, it may reasonably be inferred that its cost was such that the accused was not likely to have the money to buy it. The unlikelihood of purchase is heightened by the fact that he pawned seven other rings in the succeeding 3 days. It compellingly appears, therefore, that the accused's time of arrival at the air station could not "debilitate the other correctly understood information presented" to the commanding officer. *United States v Sam,* 22 USCMA 124, 128, 46 CMR 124, 128 (1973).

We turn now to appellate defense counsel's contention that Agent Townsend's affidavit did not contain sufficient facts to justify search of the accused's personal effects. The affidavit recites that accused had pawned and redeemed eight items of jewelry within a very brief period just before the application to search. Counsel maintains that this circumstance does not warrant a conclusion that the rings were probably among the accused's effects. Various cases are cited in support of the general principle that possession of evidence of a crime at one place does not indicate probable possession of other evidence at a different place; and special reliance is placed on *United States v Flanagan,* 423 F2d 745 (5th Cir 1970).

■ In *Flanagan,* the defendant was arrested in Dallas, Texas. On his person

was an article taken 10 days previously in a burglary from a residence in Houston. A warrant was obtained to search defendant's residence in Fort Worth, Texas. In concluding that the affidavit upon which the warrant was based was insufficient to justify search of the residence in Fort Worth, the Court of Appeals noted that it did not contain even a conclusory statement that any stolen article was likely to be found at that place. It was observed further that the defendant had a second residence in another town and "spent much of his time" at the home of his sister in Fort Worth, rather than in his own residence in that community. Here, the accused's only place of residence, as indicated in Townsend's affidavit, was on the air station. The stolen jewelry, which had a retail value of over $8,000 was too valuable to risk loss by being carried around; and if it was concealed, the place of concealment, reasonably, had to be readily available to accused and one which would not excite the curiosity of others by accused's frequent visits to it.[3]

The two logical and reasonable places that met these requirements were the accused's living quarters and his locker at his work station. We are satisfied, therefore, that the commanding officer had probable cause to believe that the stolen jewelry would be found at either or both of these places. *United States v Walters,* 22 USCMA 516, 48 CMR 1 (1973); *United States v Sparks, supra; United States v Lucarz,* 430 F2d 1051 (9th Cir 1970). Thus, the authorization to search was lawful, and the results of the search were properly admitted into evidence at the trial.

The decision of the Court of Military Review is affirmed.

Judge Cook and Senior Judge Ferguson concur.

---

[3] That accused had frequent recourse to his cache of jewelry is apparent from the number of times he went to the pawn shop.