UNITED STATES

v.

Sergeant Tommie L. REYNOLDS, FR 149–44–3238 1972d Communications Squadron Armament Development and Test Center (AFSC).

ACM 21938.

U. S. Air Force Court of Military Review.

Sentence Adjudged 18 July 1975.

Decided 5 March 1976.

Appellate Counsel for the Accused: Colonel Jerry E. Conner and Captain David A. Bateman. Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Captain Alvin E. Schlechter and Lieutenant Colonel George L. Frederick, USAFR.

Before LeTARTE, Chief Judge and EARLY, Senior Judge and FORAY, Appellate Military Judge.

## DECISION

EARLY, Judge:

Tried by general court-martial, the accused was convicted, despite his pleas, of two specifications of larceny, and two specifications of unlawful entry, in violation of Articles 121, and 134, respectively, all Uniform Code of Military Justice, 10 U.S.C. §§ 921, 934. The approved sentence extends to a bad conduct discharge, confinement at hard labor for two years, forfeiture of all pay and allowances and reduction to airman basic.

Appellate defense counsel invite our attention to the errors assigned by the accused in his request for appellate representation and assert four additional errors. Except as discussed below, we find these assignments to be without merit.

At both levels, defense counsel challenge the legality of two searches of off-base quarters which resulted in the seizure of property which was introduced at trial in support of the two larceny specifications. As different legal principles are involved in each, they will be discussed separately.

▮ In both instances, the quarters searched was the trailer rented by an Airman Ray, a female friend of the accused. During an investigation into the theft of personal property from the barracks room of a Sergeant McDaniel, the accused was implicated by the exclamation of a Sergeant Bennett, who had seen the accused and others carrying items shaped like stereo equipment out of the barracks just prior to the time Sergeant McDaniel returned to his room and discovered them missing. When the Security Police responded to McDaniel's call, Sergeant Bennett stated that the accused had "ripped off McDaniel." The investigation then focused on the accused. Subsequently his relationship with Airman Ray was disclosed, and she was brought to the Security Police office for interviewing. During the interview she admitted that the accused frequented her off-base quarters. At the request of the Security Police, Airman Ray gave her written consent to search her off-base quarters for "stolen property belonging to Sgt McDaniel." There is some question as to the scope of the search authorized as Airman Ray was told that it sought "stereo equipment" whereas the Security Policemen and the deputy sheriff, who conducted the search, had a list which enumerated other items of personal property, including a distinctive German beer mug, which had been taken from Sergeant McDaniel. This list was not shown to Airman Ray. When the investigators arrived at Airman Ray's trailer, they found the accused inside. In spite of his objections, the search was conducted and resulted in the seizure of the missing beer mug which was in plain view on a shelf by the door. Certain other stereo equipment was noticed in the trailer, but it was not of the type stolen from Sergeant McDaniel. At some point during the search, Airman Ray asked the investigators to leave, which they subsequently did.[1] Airman Ray told them that the accused had brought the beer mug to her trailer. She had previously told them that the accused brought the stereo equipment to her quarters in November, 1974.

---

1. In our opinion the consent to search was terminated when the investigators were told to leave. See *People v. Martinez,* 259 Cal.App.2d Supp. 943, 65 Cal.Rptr. 920 (1968). There is an apparent conflict as to when the mug was found. One of the investigators testified that he saw the mug "immediately upon stepping through the door." Another observed the mug "subsequent to entering." It was located on a shelf right by the front door. However, it was not *seized* until after Airman Ray asked the investigators to leave. Under these circumstances, we hold that it was discovered during that part of the search which occurred prior to the termination of consent.

Several days later, the Security Police-men became aware of an investigation of another barracks theft which had occurred in November, 1974, involving stereo equip-ment stolen from a Sergeant White and which included items similar to that found in Airman Ray's trailer. One of the investi-gators asked Airman Ray to obtain the serial numbers from the stereo equipment in her trailer to see if they matched those listed as stolen from Sergeant White. However, the numbers she provided were not of the sort that would be found on the particular brands of equipment.[2] Never-theless, believing this to be the stolen equipment, Sergeant Burch, one of the in-vestigators who had participated in the ear-lier search, went before a state court judge to request a warrant to reenter Airman Ray's trailer. Sergeant Burch told the judge of the White theft and gave him a list of equipment taken from White which included serial numbers and items not ob-served earlier in Airman Ray's trailer. He told the judge of the particular equipment he saw during the prior search and opined that it was that taken from White. The affidavit supporting the warrant (as well as the warrant itself) incorporates the White list, which was far more extensive than what was observed by Sergeant Burch in the trailer, even though the affidavit states that those items are "now being kept on said premises." The warrant was executed by the county sheriff, the equipment was seized, and it was later turned over to the Security Police for the purpose of the in-stant trial.

■ Defense counsel challenge the ad-mission into evidence of the mug obtained during the first search and on the ground that the consent to search was not freely given and/or was subsequently revoked.

Consent to a search obviates the neces-sity for a search warrant; for the exist-ence of probable cause to believe that

criminal evidence will be found; or for any other basis of justification for Government intrusion into the privacy of the individual's person and effects. *United States v. Castro,* 23 U.S.C.M.A. 166, 48 C.M.R. 782 (1974).

But the Government must demonstrate that the consent was voluntarily given.[3] *United States v. Cady,* 22 U.S.C.M.A. 408, 47 C.M.R. 345 (1973); *United States v. No-reen,* 23 U.S.C.M.A. 212, 49 C.M.R. 1 (1974); see also *People v. Martinez,* 259 Cal.App.2d Supp. 943, 65 Cal.Rptr. 920 (1968). Consent may be limited in scope, and may be with-drawn even while the search is in progress. *United States v. Cady; United States v. Castro,* both supra. Here the written con-sent set the search parameters as "stolen property belonging to Sgt McDaniel," which included the miscellaneous personalty as well as the stereo taken from his room. However, Airman Ray testified that she believed that the search was limited to stereo equipment and that the investigators refused to show her the entire list of miss-ing property.

These facts would seem to bring the search into the rationale of *Castro,* supra. There, the accused gave consent to a Government investigator to search his per-son for *marked money* from an alleged drug sale. The money was not found, but the investigator discovered a notebook contain-ing names and numbers which corresponded with persons believed to have participated in prior drug sales with the accused. The Court of Military Appeals held that the notebook was not an item of *contraband,* and that the import of the names and num-bers contained therein was not readily ap-parent without detailed scrutiny. Accord-ingly, the notebook was illegally seized and was inadmissible against the accused. *United States v. Castro,* supra.

■ Here, the situation is complicated by the fact that the written consent is all-en-

2. In fact it was later found that the serial num-bers had been removed. The numbers Airmay Ray supplied came from boxes and from num-bers placed on the equipment by the accused.

3. Our examination of Airman Ray's testimony impels the conclusion that her consent was freely given. In fact she believed that the search would absolve the accused from any complicity in the crimes.

compassing, but the understanding of the person giving the consent is much less broad. However, it is clear that the consent gave permission for the officers to legally enter the property. It is also clear that the mug was in open view to one inside the trailer and was readily identifiable as the property stolen from McDaniel earlier. "When police officers are at a place rightfully, they are not required to close their eyes to their surroundings; . . . they are not guilty of any impropriety in allowing their eyes to wander.'" *United States v. Burnside*, 15 U.S.C.M.A. 326, 35 C.M.R. 298, 304 (1965). Accordingly we hold that the investigators, being properly on the premises, did not violate the Fourth Amendment, when they seized without a warrant the contraband or fruits of a crime, which was in plain view. *United States v. Burnside*, supra; see also *United States v. Davis*, 327 F.2d 301 (9th Cir. 1964) and cases cited therein. Having been properly seized, the mug was admissible in evidence against the accused.

■ Turning to the second search, we begin with the proposition that, with certain exceptions, a military member's off-base residence cannot be searched without a warrant which meets the requirements of the Fourth Amendment. *United States v. DeLeo*, 5 U.S.C.M.A. 148, 17 C.M.R. 148 (1954); *United States v. Mitchell*, 21 U.S.C.M.A. 340, 45 C.M.R. 114 (1972); *United States v. Garlich*, 15 U.S.C.M.A. 362, 35 C.M.R. 334 (1965); *United States v. Ross*, 13 U.S.C.M.A. 432, 32 C.M.R. 432 (1963). Here the affidavit, on its face, establishes reasonable grounds for the search. Only by going behind the affidavit can it be shown that some of the items listed therein were not observed in the place to be searched. The question is the extent to which attacks upon the truthfulness of the affidavit will be permitted. In *United States v. Turck*, 49 C.M.R. 49 (A.F.C.M.R. 1974), pet. denied, 49 C.M.R. 889 (1974), this Court established for the Air Force the rule favored by the weight of authority in federal jurisdictions as stated in *United States v. Carmichael*, 489 F.2d 983, 988–9 (7th Cir. 1973):

[A] defendant is entitled to a hearing which delves below the surface of a facially sufficient affidavit if he has made an initial showing of either of the following: (1) any misrepresentation of the government agent of a material fact, or (2) an intentional misrepresentation by the government agent, whether or not material.

\* \* \* \* \* \*

However, once such a hearing is granted, more must be shown to suppress the evidence. Evidence should not be suppressed unless the trial court finds that the government agent was either reckless or intentionally untruthful. A completely innocent misrepresentation is not sufficient.

\* \* \* \* \* \*

Even where the officer is reckless, if the misrepresentation is immaterial . . . there is no justification for suppressing the evidence.

■ Here the affiant, Sergeant Burch, testified that he told the judge that he had been in the trailer before; that he observed the stereo equipment; that in looking over the case file of the White theft, he became convinced that it was the same stereo equipment taken earlier from White; and, that the information given to the judge came partly from what he saw and partly from the White file. He also admitted that he did not verify the serial numbers appearing on the affidavit and did not intend that it be believed that he saw them at that time. Sergeant Burch also stated that this was the first affidavit he had ever prepared and that a deputy sheriff had assisted him in preparing it.[4] While we find that there are some misrepresentations in the affidavit—and certainly it is not a model to be emulated—we do not believe that these misrepresentations can be held the product

---

4. We note that the deputy sheriff actually typed out the affidavit and Sergeant Burch signed it.

of reckless or intentional untruthfulness. Sergeant Burch correctly identified (absent the missing serial numbers) the amplifier, the turntable, and two speakers. The remainder of the information incorrectly taken from the list of stolen property from the White file would not, if omitted, have made the affidavit any less valid to support the warrant. Under the circumstances, we hold that the misrepresentations did not materially affect the sufficiency of the affidavit to provide probable cause. Accordingly, the property was properly seized and admitted at trial.

The findings of guilty and the sentence are

AFFIRMED.

LeTARTE, Chief Judge, and FORAY, Judge, concur.