UNITED STATES

v.

**Airman First Class Jeffery L. BURDEN,
FR 553–98–4040, United States
Air Force.**

ACM 22352.

U. S. Air Force Court of Military Review.

Sentence Adjudged 19 Jan. 1978.

Decided 10 July 1978.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Wade B. Morrison.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Edward F. Rodriguez, Jr., USAFR.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

EARLY, Chief Judge:

Tried by general court-martial, military judge alone, the accused was convicted, despite his pleas, of transferring cocaine, possessing marijuana and possessing cocaine, all in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The adjudged sentence was a dishonorable discharge, confinement at hard labor for two years, total forfeitures and reduction to airman basic. The convening authority approved only so much of the sentence as provided for a bad conduct discharge, confinement at hard labor for 18 months, total forfeitures and reduction to airman basic.

Appellate defense counsel assert six errors. Except as discussed below they are either without merit or were considered by the review of the staff judge advocate and properly resolved against the accused.

In their first assignment, appellate defense counsel assert:

THE MILITARY JUDGE ERRED IN ADMITTING PROSECUTION EXHIBITS 3 AND 5 OVER OBJECTION THAT THEY WERE OBTAINED IN A SEARCH WHICH WAS NOT BASED UPON PROBABLE CAUSE.

We disagree.

In support of this allegation, appellate defense counsel attack the credibility of the Government informer, one Senior Airman McNeilly, on the grounds that he had previously made a false allegation against an agent of the Air Force Office of Special Investigations (OSI) which resulted in his being rejected as a source of information by the OSI.

At trial there was evidence taken from OSI files that McNeilly, while at a previous assignment, had been an OSI informer who had provided information resulting in numerous court-martial convictions. Because of the dangers associated with his activities, McNeilly was transferred to Hawaii and subsequently to several bases in the United States. Two of these transfers were caused by McNeilly disclosing his prior activities as an informant. While he was at one of the bases, McNeilly made an allegation against his handling agent which was later proven false. This resulted in his being placed on the "burn list," a tabulation of sources not to be used by the OSI in future cases.[1] After his assignment to March Air Force Base, California, McNeilly brought to the OSI a vial of substance taken from the accused which McNeilly alleged was heroin but which was found to be cocaine upon laboratory testing.

Based on this evidence, appellate defense counsel contend that the test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) has not been met in that the reliability of the informant was not established to the person authorizing the search.

 The fact that a search has been authorized by a person competent to give such authority does not, in and of itself,

---

1. There was also evidence tending to show that McNeilly had claimed credit for the exposure of a drug ring in the civilian community which the OSI could not verify. McNeilly essentially denied making such a statement.

conclusively establish the legality of the search. *United States v. Henning*, 22 U.S. C.M.A. 377, 47 C.M.R. 229 (1973); *United States v. Alston*, 20 U.S.C.M.A. 581, 44 C.M.R. 11 (1971). What must be shown additionally is that the authorizing official had facts before him that would lead a reasonable, prudent person to conclude that the matter for which the search is to be made constitutes evidence of a crime, and, that such matter is at the place to be searched or on the person to be searched.[2] Ibid. The evidence placed before the authorizing official must amount to probable cause to authorize the issuance of the search authority. Ibid.; *United States v. Kohler*, 4 M.J. 941 (A.F.C.M.R.1978) and cases cited therein. Otherwise, the Fourth Amendment to the United States Constitution bars the search as an invasion of privacy. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In determining whether probable cause existed, we are limited to the information presented to the authorizing official. *United States v. Dametz*, 495 F.2d 50 (9th Cir. 1974); *United States v. Henning; United States v. Alston*, and *Aguilar v. Texas*, all supra.

With these principles in mind, we turn to the evidence elicited at trial from the authorizing official.[3] As recalled by that individual in his trial testimony, he was told the informer's name, the identity of the occupant of the room, that the informer had seen the marijuana the preceding day, that the informer had given information leading to courts-martial at previous stations, that the informant had been reassigned several times for his own protection, that certain of these reassignments resulted from the in-

formant's "big mouth," that the informant had made a false statement about an OSI agent and was placed on the "burn list" because of it, that the OSI did not use him as an informant anymore, that the informant specifically identified the place where the marijuana was located in the room, that the informant was familiar with the appearance of marijuana from his previous work with the OSI, that the room number and its occupant (the accused) had been verified, and that the informant stated that there was to be a marijuana party in that room on the night in question. He was also told that the informant had brought a vial of suspected heroin to the OSI earlier which he said was obtained from the accused. Further, he was told that there had been no attempt to independently corroborate the informant's story other than to verify the occupant of the room.

In reaching his determination that probable cause for the search existed, the deputy commander stated:

> . . . I knew that he had been credible in the past; that he had offered credible information and it had been acted on; that had resulted in actions being taken. The items on the other side of the scale, blowing his cover, talking too much, maybe carelessness and he was discovered and the subsequent moves, and the allegations against the OSI agent. But I think the prime thing that—or what—I won't say "prime" but altogether one of the most important things that I considered was the recency of this, the fact that he had in fact just yesterday been shown this marijuana, the details that it was in the wall locker, that it was in a

---

**2.** "[B]efore the trial we deal only with probabilities that 'are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.'" *United States v. Harris*, 403 U.S. 573, 582–3, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), quoting *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

**3.** We are fortunate in this case in having an official whose understanding of his legal responsibilities as well as his powers of recollection were exceptional. Cf. *United States v.*

*Penman*, 16 U.S.C.M.A. 67, 36 C.M.R. 223 (1966). It should be noted that a review of the civilian cases on this subject, based as they are solely on the contents of the affidavits presented to the magistrate, disclose far less information being submitted and give far less insight into the deliberative processes used by the magistrate in making his decision than do the military cases which usually involve an oral presentation to the authorizing official. See *United States v. Hartsook*, 15 U.S.C.M.A. 291, 35 C.M.R. 263 (1965).

tote-type bag, and that he had in fact been invited to join the party that was supposed to be planned or taking place that night after the swing shift. That was current, direct—I felt—information, positive-type information and I felt that its existence was most likely; that we would in fact find what he was talking about and what he was telling us.

\* \* \* \* \* \*

Reviewing and taking into consideration all circumstances, occurrences, facts, on the subject, that there is reasonable reason to believe that, based on all these facts, that there is in fact marijuana or whatever it is, might be that you are requesting search and seizure for, is where you think it is.

The rule is that "[t]he standard for probable cause is neither a prima facie showing of criminal activity nor guilt beyond a reasonable doubt. . . . (citations omitted) The magistrate is not required to determine whether *in fact* the items to be searched for are located at the premises to be searched, but only whether there is *reasonable ground* to believe that they are there." *United States v. Dametz*, 495 F.2d at 55; see also, *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).[4]

We believe, and so hold, that the information presented to the commander establishes probable cause that the contraband to be seized was located at the place to be searched.

Turning now to the second aspect of appellate defense counsel's attack, the lack of reliability of the informant, we believe that their reliance on the rationale of *Aguilar v. Texas*, supra, is misplaced. It is now generally recognized that the *Aguilar-Spinelli*[5] doctrine is applicable to the particular problem of *unidentified informers* and does not apply where there is a named

eyewitness informer. *United States v. Burke*, 517 F.2d 377 (2d Cir. 1975); see *United States v. Lidle*, 21 U.S.C.M.A. 455, 45 C.M.R. 229 (1972). Certainly logic indicates that the standard for establishing the reliability of unnamed informer would be greater than for a named informer who has already made a statement to the persons applying for the search authority. As was held in *United States v. Bell*, 457 F.2d 1231, 1238-9 (8th Cir. 1972):

It is now a well settled and familiar concept, as enunciated by *Aguilar* and *Spinelli*, that supporting affidavits in an application for a search warrant must attest to the credibility of an informant and the reliability of his information. . . . (citations omitted) We have discovered no case that extends this requirement to the identified bystander or victim-eyewitness to a crime, and we now hold that no such requirement need be met. The rationale behind requiring a showing of credibility and reliability is to prevent searches based upon an unknown informant's tip that may not reflect anything more than idle rumor or irresponsible conjecture. Thus, without the establishment of reliability, a "neutral and detached magistrate" could not adequately assess the probative value of the tip in exercising his judgment as to the existence of probable cause. . . . None of these considerations is present in the eyewitness situation such as was present here. Such observers are seldom involved with the miscreants or the crime. Eyewitnesses by definition are not passing along idle rumor[s], for they either have been the victims of the crime or have otherwise seen some portion of it. A "neutral and detached magistrate" could adequately assess the probative value of an eyewitness's information because, if it is reasonable and accepted as true, the magistrate must believe that it was based

---

4. The magistrate "need not have been convinced of the presence of narcotics in the apartment;" it is sufficient if "there was substantial basis for him to conclude that narcotics were probably present in the apartment." *Jones v. United States*, 362 U.S. at 271, 80 S.Ct. at 736.

5. *Aguilar v. Texas*, supra; *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

upon first hand knowledge. Thus, we conclude that *Aguilar* and *Spinelli* requirements are limited to the [unnamed] informant situation only.[6]

■ Here, concededly, the presumed reliability of a *named informer*, see Annot., 14 A.L.R.2d 605 (1950), is affected by the information that he had made a prior, false allegation. Such information, in our view, does not, in and of itself, make the informant unreliable; it merely raises an additional matter which the authorizing official must carefully consider in determining the existence, or lack of existence, of probable cause.

■ As indicated, the entire "track record" of the informant was made known to the authorizing official, and he made his determination based upon all of the facts presented to him. No effort was made to hide the informant's background.

Having reviewed all the information presented to the deputy commander, we cannot say that he abused his discretion in granting the authority to search. After all, it is commonly understood that "[i]nformants are usually not members of high society. He who informs on criminals is often a criminal himself . . . ." *United States v. Dametz*, supra, at 56. It is, of course, conceivable that the informant lied to the agents, or that the agents lied to the authorizing official, or both. "But such risks are inherent in any system allowing, as it must, that search warrants may be issued on something less than a full trial of the existence of probable cause." *United States v. Burke*, 517 F.2d 377, 381 (2d Cir. 1975).

In sum, the entire picture of the informant and his information was before the authorizing official. We do not have the unexplained conclusion of the person seeking the authority which was condemned in *Aguilar* and *Spinelli*, both supra; see also, *Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933); *United States v. Lidle*, note 6, supra. Examining the standards applied by the authorizing official, we find that he properly granted the authority to search based upon probable cause. This being true, we hold that the military judge did not err in admitting prosecution exhibits 3 and 5 into evidence.

Appellate defense counsel further assert: THE DEPUTY BASE COMMANDER WAS PER SE DISQUALIFIED FROM AUTHORIZING THE SEARCH BECAUSE OF THE NATURE OF HIS OFFICE.

We disagree.

■ The authority of a commanding officer (or his proper delegate) to authorize the search of property owned, used or occupied, or in possession of a person subject to military law situated in or on a military reservation has long been recognized. See Manual for Courts-Martial, 1969 (Rev.), paragraph 152 (ch. 1); *United States v. Worley*, 3 C.M.R. (A.F.) 424 (A.F.B.R.1950); *United States v. Doyle*, 1 U.S.C.M.A. 545, 4 C.M.R. 137 (1952) and cases cited therein; Manual for Courts-Martial, 1949 (A.F.), paragraph 138. The basis for such authority is the recognition that the commander "has been vested with unusual responsibilities in regard to personnel, property, and material" and that "it is necessary that he be given commensurate power to fulfill that responsibility." *United States v. Doyle*, supra, at 140. However, in exercising that authority, he is bound by the same rules as would apply to a Federal civilian magistrate. *United States v. Hartsook*, 15 U.S.C.M.A. 263, 35 C.M.R. 263 (1965), and cases cited therein; *United States v. Guerette*, 23 U.S. C.M.A. 281, 49 C.M.R. 530 (1975).

---

**6.** "[T]here has been a growing recognition that the language in *Aguilar* and *Spinelli* was addressed to a particular problem of professional informers and should not be applied in a wooden fashion to cases where the information comes from an alleged victim or witness to a crime. Indeed any other view would mean that . . . it would generally be impossible to use hearsay statements of victims or witnesses since ordinarily they would not be previously known to the police." *United States v. Burke*, 517 F.2d 377 (2d Cir. 1975); see also *United States v. Rajewich*, 470 F.2d 666 (8th Cir. 1972); *Ignacio v. People*, 413 F.2d 513 (9th Cir. 1969), cert. denied, 397 U.S. 943, 90 S.Ct. 959, 25 L.Ed.2d 154 (1970); *United States v. Lidle*, 21 U.S.C.M.A. 455, 45 C.M.R. 229 (1972).

This court has recently affirmed the exercise of that authority. See *United States v. Kohler*, 4 M.J. 941 (A.F.C.M.R.1978), pet. granted, 5 M.J. 214 (C.M.A. 1978). We are aware that petitions for review have been granted on this issue. However, whatever may be the ultimate resolution of the current challenge to this long-standing authority of commanding officers, we believe that the instant case provides ample justification for the existing procedures.

Here, the commander was provided with sufficient factual information to establish probable cause for the search authorized—in reality, probably more than would have been required in a civilian context—and, he received the correct legal principles from his staff judge advocate. His deliberative processes, well documented in the record of trial, disclose the careful attention required by the law for the exercise of his discretionary powers.[7] We are impressed that a legally trained magistrate could not have improved upon this commander's exemplary exercise of judicial powers and discretion. Given the exigencies of the military milieu and the facts of Air Force life, we find no prejudice to the accused in the procedures followed, and, hence, no reason to affect change in this long-recognized and necessary practice.[8] Cf. *United States v. Guerette*, supra. Under these circumstances, we find no constitutional bar to the exercise of these powers by a commanding officer.

The findings of guilty and the sentence are

AFFIRMED.

Judges ORSER and ·ARROWOOD, concur.

Judge HERMAN was absent.

7. In reviewing the grant of a search warrant in a Federal civilian court, no such information is available to the trial judge, as he is limited to the facts contained in the affidavit and the search warrant itself. *Aguilar v. Texas*, supra; cf. *United States v. Reynolds*, 1 M.J. 823 (A.F. C.M.R.1976). In the military, by marked contrast, the trial judge has the benefit of having the "neutral and detached magistrate" before him, available for cross-examination. This commonly results in a far more searching inquiry into the underlying rationale for the decision than would be possible in the civilian practice. The resultant effect is to permit a judicial review of the judicial action taken by a layman. Thus, "both the trial courts and appellate forums are available to insure that the commanding officer does not abuse his discretion to the extent that the rights of the individual are unduly impaired." *United States v. Doyle*, supra, at 140.

8. It is not difficult to imagine the difficulties that would arise from requiring search authority to be exercised only by a legal officer. There are countless situations where lawyers are not readily available, and the need to search is immediate. The Manual recognizes this need. The present procedures, in our opinion, provide due process to a person challenging the search.